No. 2371.

## MAX ELSER *v.* H. W. GRABER.

1. ATTACHMENT—CLAIMANT'S BOND—PRACTICE.—The proper practice when property is levied on by two or more writs of attachment, and is claimed by one other than the defendant in attachment, is to execute one claim bond payable to all the plaintiffs in the writs.

2. CASE REVIEWED.—Green v. Banks, 24 Texas, 508, reviewed.

3. FRAUDULENT SALE—INSOLVENT.—A creditor may not only lawfully receive from his debtor with notice of the insolvency of the latter, enough property to pay his debt, but he may receive more of such property than would in value be adequate to discharge the debt, provided he is bound by the terms of the sale to see that the excess of purchase money over his debt is honestly applied to the payment of other debts, and secures it to be thus appropriated. If, however, the preferred creditor executes his note for the excess to the vendor, he contributes to place the excess beyond the reach of other creditors, thus tainting the entire transaction, so that it becomes fraudulent in law.

APPEAL from Ellis. Tried below before the Hon. Anson Rainey.

*M. B. Templeton,* for appellant: On his proposition, that, while a creditor may purchase goods from a failing debtor in payment of a debt, provided the same is bona fide, etc., yet he can not take more than sufficient property than is reasonably necessary to pay his debt, and execute his negotiable promissory note to the debtor for its excess, and especially so when his purpose in doing so is to hinder or delay other creditors, and to help the debtor out of a "tight place," cited 59 Texas, 126; 62 Texas, 201; 61 Texas, 182; 63 Texas, 30; 63 Texas, 83; 65 Texas, 108; Southwestern Reporter, volume 4, number 9, page 562, Oppenheimer v. Halff, et al.

That the court erred in overruling appellant's exception to the claimant's bond, the same having been payable to Max Elser and C. A. Arnold jointly and severly, the attaching creditors, he cited Green v. Bank, 24 Texas, 508.

No brief for appellee on file.

GAINES, ASSOCIATE JUSTICE. Two writs of attachment were issued from the district court of Ellis county and levied upon a

stock of drugs valued by the sheriff at two thousand nine hundred and ninety-three dollars, as the property of one F. M. Danelly, one in favor of appellant, which was first in point of time, and the other in favor of C. A. Arnold. Appellee claimed the property and filed a claimant's oath and bond. The bond was made payable jointly and severally to the plaintiffs in the two writs. A trial of the right of property was had in the court below, which resulted in a judgment for claimant, and it is from that judgment that Elser now appeals.

Appellant excepted to the bond because it was made payable to plaintiff in both attachments, and his exceptions having been overruled, he assigns the ruling as error. There is no express provision in our statute to meet the case of a claimant of property levied on by virtue of two or more writs against another party; and the proper practice can not be deemed settled in our courts. It is intimated in Blankenship-Blake Company v. Thurman, decided at the present term, that the correct proceeding in such case is to make one claim, and one bond payable to all the plaintiffs in the writs and to settle the rights of all the parties in one suit. But the decision of the question was not called for by the record in that case and it was not determined. We are of opinion, however, that the course there suggested is the proper practice. The statute being silent upon the point, we should consider that the Legislature intended that course to be pursued, which is least oppressive to the parties and which conduces most to a speedy determination of the issues involved. Viewing this matter from this standpoint, we think the question admits of a ready solution. In providing the mode of the trial, the law should respect the rights and consider the situation of all parties. We see no injustice in requiring each plaintiff in the writs to make his contest in the same suit. As a general rule their cases would be the same and to be determined by the same issues, and as a matter of fact, they might be expected to make common cause.

In exceptional instances, it is true, the rights of one creditor, as against the claimant, may be superior to another (without reference to the question of priority), and then, as between them and the claimant, the issues would be different. Such a case is rare. Also creditors whose rights are the same may differ as to the issues to be made. But in each of these cases, each would be free, under our system of jurisprudence, to make his own contest upon his own grounds. A suit with three and even more

parties, each claiming as against the others and involving issues between some in which others are not interested, is not unusual in our practice. Therefore we can not see that any injustice will result to the creditors from the rule for which we announce. On the other hand, we think the contrary practice calculated, in many instances, to act oppressively against the claimant. He would be required not only to give successive bonds and contest his rights with as many claimants. It sometimes happens that ten or more writs are levied upon the same goods. Should he give bond in each case, and gain nine successive suits, he must still contest the tenth, unless the last creditor yield; and in the end he would find his property consumed in attorneys' fees and other expenses of the litigation. We can not believe that the Legislature intended to make a law that would lead to such manifest injustice. The law was made for the benefit of claimants, and for the purpose of securing a speedy trial of the right of property claimed by one when taken by virtue of a writ against another. We are required to construe the Revised Statutes, though in derogation of the common law, "liberally  *  * with a view to effect their objects and to promote justice." (Rev. Stats., final title, sec. 3, p. 718.) The construction contended for by appellant would, in many instances, deny the remedy to those for whose benefit it was given, and can not therefore be upheld. Besides, it is not in accordance with our judicial system, which abhors a multiplicity of suits and always strives to bring before the court all parties at interest, however numerous and however diverse their claims, in order to have their rights settled in one action.

We have been cited to the case of Green v. Banks, 24 Texas, 508, in support of the proposition that the bond in question was insufficient. The same point was made in that case upon a similar bond, but the court held that the appellant there was not in a position to complain of the ruling of the court in sustaining the bond, and therefore expressly declined to determine the question. The appellant in that action moved the court to consolidate the case with another, made by a levy in favor of another plaintiff by virtue of a second execution, which the court below refused; but this court held that he was not prejudiced by that ruling. It is, however, very strongly intimated in the opinion, both that the bond was invalid and that the motion was properly overruled. But we do not understand that either question was authoritatively decided; and notwithstand-

ing our great respect for the court who rendered the decision, and for the eminent judge who there spoke for it, we are constrained for the reasons stated, to differ from the opinion intimated upon the construction of the statute as applicable to such cases.

The other assignments of error relied on by appellant raise a question which involves the merits of the controversy, and upon this he has a better case. The appellee claimed the goods by virtue of a sale to him by the defendant in attachment, made before the levy. Appellant contended that this sale was fraudulent as to creditors; but the court found it fair, and this is the ruling of which he now complains. The uncontroverted facts were, that appellee Graber was the father-in-law of Danelly, the defendant in the writs of attachment; that Graber signed Danelly's paper for his accommodation, and Danelly became thereby indebted to him in the sum of one thousand eight hundred and forty dollars. Danelly subsequently found that he was not able to meet his liabilities, and went to his father-in-law to advise with him, and made to him a full statement as to his financial condition. Graber thereupon told him that he was insolvent; and it was agreed between the two that Graber should take the stock of goods at two thousand five hundred dollars; and that one thousand eight hundred and forty dollars of the price should go to extinguish his own claim, and that he should execute his note for the balance. Graber thereupon made and delivered his negotiable promissory note to Danelly for six hundred and sixty dollars, due twelve months after date; and Danelly took possession of the stock of goods, as his agent, and was disposing of them as such when the writs were levied. It seems Graber expected Danelly to use his note in settling with his creditors, and urged him to go to the appellant and settle with him first. This Danelly attempted, offering the note at a discount and a secured note for the balance of appellant's demand. The offer having been declined, the note was applied by the payer to the payment of some of his other liabilities.

It is the well settled law of this court, that a creditor may lawfully receive of his debtor, a sufficient amount of his property to pay his debt, though the latter be in failing circumstances, and this be known to the creditor, and although the necessary result is to hinder and delay other creditors—provided he receive no more than is reasonably sufficient to satisfy his claim. (Lewy v. Fischl, 65 Texas, 311; Ellis v. Valentine, Id., 532; Greenleve v.

Blum, 59 Texas, 124; Smith & Company v. Whitfield, 67 Texas, 24.) The right of the insolvent debtor to prefer his creditor makes an exception and takes the case out of the operation of the statute of frauds. This court has gone further, and has held that such a transaction is not fraudulent, although the debtor has received more than enough property to pay his debt, provided by the terms of the sale he is bound to see that the excess of the purchase money over his own debt is to be applied to the payment of other preferred creditors, and does see that it is so applied. (Ellis v. Valentine, supra.)

But the facts shown by the record before us make a very different case. Here Graber received property of value considerably in excess of the amount of his debt. He did not obligate himself to pay the excess to other preferred creditors; but executed his negotiable note therefor, payable on a long credit, to the vendor. By this transaction, he placed that portion of the property not used to pay his own claim, beyond the reach of the other creditors; and left the vendor free to deal with it as his own. The necessary consequence of this proceeding was to hinder and delay the other creditors as to this surplus, and the parties must be presumed to intend the direct result of their own willful conduct. The transaction is fraudulent in law; and appellee can not be permitted to say that his intent was fair, and that Danelly agreed to appropriate the note to the payment of his other creditors. The point has been repeatedly decided by this court. (Oppenheimer v. Halff, 4 S. W. Rep., 562; Seeligson v. Brown, 61 Texas, 180.) The fraud of a part taints the whole transaction, and it must be set aside. (Lambeth v. McClinton, 65 Texas, 108.)

There being no controversy about the facts, and the sale of the goods being, in our opinion, fraudulent, the judgment will be reversed and remanded, with the following instructions to the court below: The district court of Ellis county will assess the value of the property claimed by appellee in this proceeding after hearing evidence for that purpose, and will without further contest of the right of property render judgment against the claimant and the sureties on his claim bond, in favor of appellant for the value so assessed, and for ten per cent damages upon said value, but not to exceed ten per cent upon the amount claimed in appellant's writ of attachment as well as for all costs of suit. The judgment so rendered will also direct that it may be discharged within ten days from the date thereof by

the return of the property so claimed in as good condition as it was when received by the claimant, and the payment of the damages and costs so adjudged; or by the payment in full of any judgment that may have been or may thereafter be rendered in favor of appellant against F. M. Danelly, in the suit which the attachment levied on the goods in controversy was sued out, together with the costs and damages recovered in this proceeding.

*Reversed and remanded.*

Opinion delivered November 29, 1887.