## T. A. Gose v. R. R. Coryell.

### Decided March 9, 1910.

**1.—Nuisance—Abatement—Evidence—Value of Property.**

In an action to abate the operation of a cotton gin as a nuisance to plaintiff, a resident on an adjoining lot, it was proper for defendant to prove the value of his plant. The question of right to abate was one of reasonable use of property, and the comparative injury to plaintiff by its continuance and to defendant by its discontinuance was material.

**2.—Nuisance—Acquiescence—Estoppel.**

One is not estopped from seeking the abatement of a nuisance (the operation of a cotton gin adjacent to his residence and interfering with its enjoyment by dust and lint thrown thereon and by noise and vibration of machinery) by the mere fact that he has permitted such operation for years without objection. To constitute estoppel his conduct must have induced the defendant to alter his position, to his prejudice in the event of abatement.

**3.—Same—Prescription.**

The right to maintain on one's property a nuisance injuring that of an adjoining proprietor is not acquired merely by its long continued maintenance without objection. Prescription is applicable to rights exercised upon the property of another, not on that of the person relying on it. It would not begin to run until the maintenance of the nuisance injuriously affected the adjoining proprietor's use of his property, as where the latter built and occupied a residence thereon, the use of which was interfered with.

**4.—Same.**

Findings of fact in an action to abate a cotton gin as a nuisance to the resident on an adjoining lot held not to show estoppel by plaintiff or the acquiring of a right in defendant by prescription to maintain the nuisance.

**5.—Practice on Appeal—Remand.**

The maintenance of a cotton gin being adjudged a nuisance by the findings of the court, but recovery erroneously denied on the ground of estoppel of plaintiff and acquirement of a right by prescription by defendant, the court,

reversing the judgment, decline to render in favor of plaintiff on the findings, remanding the case for trial on the issue of what would constitute an abatable nuisance under the principles here announced on that subject.

**6.—Nuisance—Cotton Gin—Abatement—Reasonable Use of Property.**

The fact that the maintenance of a certain industry, such as the ginning of cotton, on the premises of the proprietor, inflicts injury upon an adjoining lot owner in the enjoyment of his residence, will not, alone, give him the right to have such industry abated as a nuisance. The question is one of reasonable use of one's own premises; all the circumstances are to be considered, including the nature of the locality as industrial or residence property, the possibility of finding a more appropriate location and the comparative injury to either by continuance or abatement respectively.

Appeal from the District Court of San Saba County. Tried below before Hon. Clarence Martin.

*Matt F. Allison* and *N. C. Walker,* for appellant.—The trial court having found the operation of defendant's gin constituted a nuisance, erred in not rendering judgment for plaintiff enjoining its operation. Rhodes v. Whitehead, 27 Texas, 304; Belton v. Baylor Female College, 33 S. W., 680; Faulkenbury v. Wells, 28 Texas Civ. App., 621; Sayles' Texas Civ. Stats., art. 451; Northwestern Fertilizing Co. v. Hyde Park, 97 U. S., 659; Platt Bros. v. Waterbury, 72 Conn., 531, 48 L. R. A., 691; Bloomington v. Costello, 65 Ill. App., 407; Litchfield v. Whitenack, 78 Ill. App., 364; Palestine Bld. Assn. v. Minor, 86 S. W., 696; Over v. Dehne, 75 N. E., 666, first sentence of second column.

Where there is a material change in a location and character of a cotton gin which constitutes it a nuisance to the comfortable enjoyment by owner of property in close proximity thereto, a prescriptive right to operate a gin in the old location constitutes no defense. Bareham v. Hall, 22 Law Times Rep. (N. S.), 116; Simpson v. Seavey, 8 Me., 109; 29 Cyc., 1207, sec. 4; Blackford v. Heman Const. Co., 112 S. W., 290.

Limitation or prescription does not begin to run until there is actual actionable injury, either to the freehold or to the comfortable enjoyment of the property for the purpose of a home. Janesville .v. Carpenter, 20 Am. St. Rep., 123; Galveston, H. & S. A. Ry. Co. v. Miller, 93 S. W., 179; Simon v. Nance, 45 Texas Civ. App., 480; 1 Wood on Nuisance, 3d ed., secs. 3, 513; 2 Wood on Nuisance, 3d ed., secs. 640, 708, 709, 712, 713, 714, 715, 719; 2 Thompson on Trials, 1392, sec. 1910; Campbell v. Seamen, 20 Am. Rep., 577; Hurlbut v. McKone, 3 Am. St., 21; Chessman v. Hale, 31 Mont., 577; Fremont, E. & M. V. Ry. Co. v. Harlin, 36 L. R. A., 422; St. Louis, I. M. & S. Ry. Co. v. Biggs, 6 L. R. A., 804; Over v. Dehne, 75 N. E., 664.

Where a right is violated, the law will not balance conveniences. Faulkenbury v. Wells, 28 Texas Civ. App., 621; High on Injunctions, sec. 746; 1 Wood on Nuisance, 3d ed., secs. 512, 555.

*Leigh Burleson,* for appellee.—It is well established that a person may acquire by prescription the right to maintain a private nuisance.

The modern doctrine is that it is sufficient to establish a right by showing a user of twenty years, or rather for such a period of time as is fixed by the statute in the several States of this country for the acquisition of title to real estate by adverse enjoyment. Wood on Nuisance, 3d ed., 909; 29 Cyc., 1206-7; 21 Am. & Eng. Ency. Law, 755, and cases cited; Baker v. Brown, 55 Texas, 378; Haas v. Choussard, 17 Texas, 588; Mueller v. Fruen, 30 N. W., 886; Bunten Co. v. Chicago, R. I. & P. Ry. Co., 50 Mo. App., 414; North Point Irri. Co. v. Utah Canal Co., 67 Am. St. Rep., 617; Totel v. Bonnefoy, 5 Am. St. Rep., 570; Wright v. Moore, 82 Am. Dec., 731.

KEY, CHIEF JUSTICE.—T. A. Gose instituted this suit against R. G. Coryell, for the purpose of enjoining and preventing the operation of a cotton gin. The plaintiff alleged that great quantities of noise, dust and lint emanating from the gin invaded his home, which is nearby the gin, and caused such discomfort and injury to himself and family as rendered the operation of the gin where it is located a nuisance.

The defendant's answer embraced a general demurrer, a general denial and a special plea of limitation or prescription.

The case was submitted to the court without a jury, and from a judgment for the defendant the plaintiff has appealed.

The trial judge filed the following conclusions of fact and law:

"1. I find that in the early part of the year 1885 John H. Beveridge purchased the land upon which the gin in controversy is situated in the town of San Saba, San Saba County, State of Texas; that shortly after the purchase of said land he began the erection of and established thereon a cotton gin run by steam for the purpose of ginning cotton; that said gin was completed during said year and commenced its operation by steam of ginning cotton that same year.

"That said gin was operated continuously, openly and uninterruptedly during a portion of each succeeding year thereafter up to the time that the same was purchased by the defendant, R. G. Coryell, in this case, some time in the year 1906; from the time of the erection of said gin by the said Beveridge in the year 1885 it was operated by the same steam power during each succeeding year up until the time the defendant took possession of the same to operate it for the same purpose. For more than twenty years prior to the time the defendant purchased said gin from the said Beveridge it had been operated upon the same block, No. 29, in the town of San Saba; that it had been operated by the said Beveridge and those to whom he had leased the same and run continuously, openly and uninterruptedly during each and every year from the time of its erection, with the possible exception of a small portion of the cotton ginning season of 1905 and 1906, on account of the short cotton crop that existed during those years and on account of the sickness of the said Beveridge, but said gin was run a portion of each of said last two mentioned years in the same manner as theretofore and as long as there was any cotton upon the market to be ginned. After the purchase of said gin by the defendant from the said

Beveridge in the year 1906 he took out the old gin stand and a portion of the machinery of said gin and installed in their place new and improved machinery of the latest make; that he put in it a new press in place of the old one that had before stood in the old gin, but he did not enlarge the output or capacity of said gin; operating ever since the same number of gin stands that had been operated by the said Beveridge for more than twenty years theretofore. From the time of the erection of said gin in 1885, the dust, lint, dirt and noise and vibrating from said gin were scattered over, heard and felt all over the portion of the lot upon which the plaintiff afterwards erected his dwelling-house and for more than twenty years before plaintiff erected said dwelling-house and moved his family thereto. I find that this dust, lint, dirt, noise and vibration was scattered over, reached to and heard on this land for more than twenty years before plaintiff erected any dwelling-house thereon and before he purchased the land upon which he erected his residence and before he moved his family thereon. I also find that when this gin was first installed that there was more dust, lint, dirt, noise and vibration than there was at a later date; that the dust, lint, dirt, noise and vibration was greater when it was first erected than at any date since said time; that as improvements were placed on said gin property from time to time that it had a tendency to decrease the amount of dust, lint and dirt that was thrown out from said gin and decreased the amount of noise and vibration that was heard and felt upon the property where the plaintiff's residence was subsequently erected, and that the improvements that were put in said gin from time to time had the tendency to decrease annually the amount of the dust, dirt and lint that was scattered over said property now owned by plaintiff, and the amount of noise and vibration that was heard and felt on said property; and no time since the erection of said gin in 1885 was the amount of dirt, dust, lint that was scattered over said property now owned by the plaintiff from said gin, and the noise and vibration that was heard and felt thereon at any time, increased, but from the time of the erection of said gin in 1885 the same was gradually decreased. That about 1890 said Beveridge added a fan for taking care of the dust, dirt and lint and during the entire time the gin was operated by said Beveridge the dust, lint, dirt and vibration were all greater than at present and as the gin is now operated by the defendant, and that the fan placed in said gin in 1890 by said Beveridge did not increase the amount of dust, dirt or lint scattered over said property of the plaintiff or increase the noise and vibration to be heard on said premises. I find that all this dust, dirt and lint, noise and vibration affected lots 4 and 5 now owned by plaintiff and upon which his residence is situated in excess of what they do now for more than twenty years prior to the purchase of same by plaintiff.

"I further find that for more than twenty years prior to the institution of this suit, with the knowledge and acquiescence of John H. Brown, who owned lots 4 and 5 now owned by plaintiff and upon which his residence is erected and where he lives with his family, the said John H. Beveridge operated said gin and sent more lint,.

dirt and dust over said lots and made more noise and vibration that affected said lots than has ever been made by the defendant in the operation of said gin since his purchase of the same and since the installment by him of modern improved machinery, and I find that from the erection and operation of said gin in 1885, said dust, dirt, and lint, and noise and vibration affecting plaintiff's property was never increased any year, but the same was gradually decreased as affecting the property in question. I find that in December, 1905, plaintiff built his house on said lots and soon thereafter moved into said residence with his family; that at the time plaintiff erected said house and at the time he moved his family thereon, he knew that the cotton gin in question and near his said residence had been for more than twenty years, used for the purpose of operating the said gin belonging to the said Beveridge and to this defendant; that said gin was standing upon the said property in the same condition that it was when owned by the said Beveridge and in the same condition in which it had been operated as a cotton gin, throwing out dust, dirt and lint over the property upon which plaintiff had erected his dwelling, and causing the noise and vibrations which affected said property whereon plaintiff had erected his said dwelling-house, and that there was nothing that showed or tended to show that said gin business would be discontinued; and that with said knowledge and with said gin in full view of the property whereon plaintiff erected his said residence he proceeded and did commence and complete said residence, moved therein with his family with full knowledge of all the facts aforesaid.

"I further find that that portion of the town of San Saba in which said gin is located is occupied by manufacturing enterprises of many different kinds, and that the residence portion of said town is to the west of the public square and has moved west and south from the locality where said gin is erected. I find that in said locality and immediately surrounding the property of this plaintiff is a grist mill, a buggy factory, a machine shop, the county jail, a sawmill for the purpose of sawing up cord wood, another cotton gin and a laundry, all of which had been previously erected and were in operation at the time plaintiff erected his residence on said lots. That none of this property, to wit: the woodsaw and steam laundry is immediately adjoining on the property upon which the plaintiff erected his said residence and that said machinery was in operation at the time his said residence was erected, and both said woodsaw and steam laundry, which make considerable noise and emit steam and smoke, were owned and operated by the plaintiff in this case. That the others above mentioned are operated by steam and other engines emitting steam and smoke and make noise in that portion of the town.

"I find that the property purchased by the defendant from said Beveridge, to wit: the said gin and the lots on which the same is situated, is worth at the time of the institution of this suit about $4500 or $5000, and that plaintiff had offered his property for sale, residence, sawmill and steam laundry all for $1800.

"I find that at the time of the improvements of said property by the defendant, that the plaintiff was present, knew of the erection

thereof, made no protest or complaint whatever to plaintiff as to his operating said gin, and at one time that plaintiff assisted said defendant in the mending of some gin belts for the purpose of operating said gin. I find that the new machinery placed in said gin by the defendant has caused a great decrease in the amount of dust, dirt and lint that is thrown over plaintiff's land and a great decrease in the amount of noise and vibration that was heard and felt upon said land compared to that which was caused by the Beveridge gin; that all of said things have been materially decreased from what they were when the gin was operated by the said Beveridge for more than twenty years prior to the time that defendant purchased the same.

"I further find that the amount of dust, dirt and lint sent from said gin over the land where plaintiff's residence is erected and the noise and vibration affecting the same are of such nature and have been for more than twenty years, as to prevent the comfortable enjoyment of the premises as a home. I further find that much of the dust thrown on plaintiff's premises is blown there from the public road near his home caused from excessive travel over the same.

"From the foregoing findings of fact I deduce the following conclusions of law:

"1. That by the continued, adverse, uninterrupted and peaceable operation of the said gin by the said Beveridge and his lessees for more than twenty years prior to the time plaintiff purchased the lots upon which he erected his dwelling and moved his family thereto, and the defendant purchasing said property by general warranty deed from the said Beveridge, conveying to him all of said property, together with all rights and appurtenances thereto in anywise belonging, that defendant has a right by prescription from said uninterrupted, peaceable and adverse operation of said property to operate said gin, plaintiff and his warrantors having acquiesced in the operation of the same for said period of time, and is estopped from asserting any complaint against the same.

"2. I further conclude that the operation of said gin by the defendant, as affects the property of plaintiff, is of a character to constitute a nuisance which could in part be abated had it not been for defendant's right to operate the same by his long continued, adverse, uninterrupted and peaceable operation of the same for more than twenty years prior to plaintiff's purchase of the property upon which his residence is situated."

*Opinion.*—There is one assignment of error which complains of the action of the trial court in allowing appellee, over appellant's objection, to prove the value of his property. While authorities may be found which hold otherwise, others, resting upon sounder reason, hold such testimony admissible. The right to relief by injunction against a nuisance is not an absolute right, but one resting in the sound discretion of the court; and, for that reason, and in order that such discretion may be wisely and justly exercised when it is sought to prevent an owner of property from using it in a lawful manner on account of injury alleged to result from such use to an adjoining proprietor, we think it is eminently proper to consider

the amount of capital which the defendant has invested in the plant or thing complained of.

By and under the other specifications of error it is urged that, as the trial court found that the operation of the gin constituted a nuisance, judgment should have been rendered awarding the plaintiff relief by injunction. And the further contention is made that the reasons assigned by the trial judge for refusing such relief embody mistaken views of the law. Though in one place in his conclusions of law the trial judge states that appellant is estopped, that statement seems to be incidental to, if not a part of, the conclusion of law which holds that the doctrine of prescription is applicable and bars appellant's right to any relief. At any rate, neither the findings of fact nor the testimony show the existence of one fact essential to constitute an estoppel in pais. In order to constitute such an estoppel it must be shown that the matters claimed to constitute an estoppel have, in some material respect, influenced the conduct of the party invoking the estoppel. In this case it is not shown that the silence and failure to protest on the part of appellant and those under whom he claims, caused appellee or his vendors to pursue the course which was pursued by them. While there is much confusion and some conflict of authority upon the subject, we are of opinion that prescription is not available as a defense in this case. Treating the subject of prescription when invoked in behalf of the right to maintain a nuisance, a standard law writer says:

"There is a distinction between a prescriptive right to do some act upon one's own premises that operates injuriously to another, and a right to do some act upon another's premises. In the latter case each act of user, before the user ripens into a right, is a trespass, for which an action may be maintained at any time, while in the former no action can be maintained until some right has been invaded. In the one case there is an actual invasion of the property itself, while in the other there is a mere invasion of some right. Therefore it will be seen that while in the one case proof of the adverse user for the requisite period may be comparatively easy, in the other it is always attended with great difficulty, and in some instances might be actually incapable of proof. The rule is, and it is important to be remembered, in view of the doctrines that will be announced hereafter, that to constitute an adverse user requisite to sustain the right, it must be shown that the user had actually invaded the right of the person against whom the claim is made, in reference to the particular matter which is the subject of complaint, and that the user, during the entire statutory period, and the invasion of the right, has produced an injury equal to, and of the character complained of, and of such a character and to such an extent that at any time during that period an action might have been maintained therefor." (2 Wood on Nuisances, sec. 708.)

In the case at bar the acts and things alleged to constitute prescription were not done upon appellant's premises, and until he established his home and placed his family upon those premises, he sustained no injury, unless it was a depreciation in the value of his lots. For these reasons we hold that the doctrine of prescription is

not available as a defense; but, at the same time, we are of opinion that the facts and circumstances relied on as constituting prescription, as well as those bearing upon the question of estoppel, are pertinent and proper to be considered in determining whether or not, in the exercise of sound discretion, relief by injunction should be granted.

In Rainey v. Red River, T. & S. Ry. Co., 99 Texas, 276, an injunction was sought to prevent the railway company from maintaining its yards, coal bins, roundhouses, machine shops, etc., in close proximity to the plaintiff's residence. That was a nuisance case, and the jury having returned a verdict which the Supreme Court treated as equivalent to a finding that the matters complained of constituted a nuisance, that court reversed the judgment of the trial court in favor of the defendant. On the authority of that case we have reached the conclusion that it is our duty to reverse this case; and, as was done in that case, remand the cause for another trial. We are not unmindful of the general rule that, when there is a special verdict or findings of fact filed by the judge, and no error has been committed other than rendering judgment for the wrong party, the Appellate Court when it reverses a case, will render the judgment which should have been rendered. That course was not pursued in the case just cited, and it will not be pursued in this case, because the judge's conclusions of law indicate that if he had not fallen into error as to prescription he would not have granted all the relief sought, and it is not shown how much relief he would have granted. Furthermore, it is highly probable that additional testimony can be produced for the purpose of aiding the court in determining whether or not any relief by injunction should be granted. And still furthermore, the court made no finding as to the reasonableness of appellee's conduct in doing the things complained of—which is an important issue in the case.

For the guidance of the court below we deem it proper to give expression to our views, in a general way, in cases of this class. The courts are practically unanimous upon the proposition that persons who live in cities, towns or villages must of necessity submit to the consequences resulting from the occupations and pursuits carried on in the immediate neighborhood which are lawful and necessary for trade and commerce; and matters which, although in themselves annoying, are in the nature of ordinary incidents of city or town life can not be abated as nuisances. It has also been frequently declared that one who uses his property in a lawful and proper manner is not guilty of a nuisance, merely because the particular use which he chooses to make of it may cause inconvenience or annoyance to a neighbor. But the lawfulness of the act, use or business is not the sole test, and that which is not otherwise unlawful may constitute a nuisance by reason of the surrounding circumstances and the result which it produces. Also, while authorities may be found tending to the contrary, the better considered cases and the weight of authority are to the effect that in cases of this kind locality is to be considered in determining whether there is a nuisance, and if so, whether relief should be awarded by injunction or the injured party restricted to an action for damages, for what might constitute a nuisance in one

locality might not be so in another. It has been held that a business which might be proper in a business or manufacturing neighborhood may be a nuisance when conducted in a residential district; and, on the other hand, a business which with its incidents might well be considered a nuisance in a residential section of a city or village, may not be subject to such complaint where conducted in a business or manufacturing locality. (29 Cyclopedia of Law and Procedure, 1157, 1159.)

The valuable authority just cited states this as a correct rule: "A fair test as to whether a business lawful in itself, or a particular use of property, constitutes a nuisance is the reasonableness or unreasonableness of conducting the business or making the use of the property complained of in the particular locality and in the manner and under the circumstances of the case; and where the use made of his property by the person complained of is not unreasonable it will not as a rule be enjoined, nor can a person complaining thereof recover damages. But when it is established that a person is creating a nuisance the mere fact that he is doing what is reasonable from his point of view constitutes no defense."

Our own Supreme Court in Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Texas, 155, in a strong and well considered opinion by Mr. Justice Williams, dealt with the perplexing problem of the relative rights of adjacent owners to use their respective premises in a lawful manner, and whether or not in so doing one owner might become liable for damages to the other. In that case the defendant had planted Bermuda grass on its right of way, and, without negligence on the defendant's part, the grass in a natural way, had spread on to and injured the plaintiff's land. The Supreme Court held that if the defendant was not guilty of negligence, the plaintiff had no cause of action; and, in the course of the opinion, it was said:

"It is a general principle of law that the owner of property may use it as he chooses, in any lawful way; but another maxim, in general terms, requires him to so use it as not to injure another. The application of these principles give rise to some of the most difficult questions and delicate distinctions known to the law. Bishop concisely states the general doctrine thus: 'One may not, either voluntarily or negligently, cast earth or other substance from his own ground on a neighbor's; or upon his own bring or erect anything, or change the natural position of anything, from which the air, the moving water, or any other force of nature will bear to another on other land what is distinctly injurious to him; or by any excavation, structure or other change of his premises from their natural condition, render them unsafe to other persons and their property lawfully thereon; while yet these restraints will not be drawn so closely as substantially to deprive him of the use of his lands, or the ordinary pursuit of his own interests or to render him answerable for the inevitable accidents injuring others.' Non.-Con. Law, sec. 829.

"Since the owner may use his land as he chooses, if he does not violate any law, and is not to be substantially deprived of its use or of the ordinary pursuit of his own interests, but at the same time is required in its use to avoid injury to another, it at once follows

that he may be required to forego a particular use when it is not essential to the substantial enjoyment of his property and is fraught with unreasonable loss to his neighbor. On the other hand, the particular use may be so important to the owner and the loss or inconvenience to his neighbor so slight, compared to his, were he forbidden to so employ his property, that it would be unreasonable and unjust to impose such a restriction. In such cases it is evident that all of the circumstances of the situation must be taken into consideration, the importance of the use to the owner as well as the extent of the damage to be inflicted upon his neighbor, and the rights of the parties are to be adjusted in a practical way, the question being whether or not the proposed use is a reasonable one under all the circumstances. 1 Wood on Nuisances, 3; Bishop on Non.-Con. Law, secs. 418, 842. We are unable to discover that the law does, or, from the nature of the subject, can furnish a more definite rule. For this reason we think it can not be laid down as a rule of law applicable to all circumstances and situations that one who plants Bermuda grass upon his premises makes himself liable for any damage that may result to his neighbor; nor, on the other hand, that he may not be liable under some circumstances and conditions. As is said in some of the authorities, there must, in such inquiries where rights and interest seem to conflict, be a balancing of them."

Though not specifically so designated by our Supreme Court, that was a nuisance case and is so treated by the editors of the American State Reports, as shown by the syllabus under which it is reported in vol. 86, p. 835. And in Rainey v. Railway Co., supra, the same court in recognizing the doctrine that injunction is not an absolute remedy for a nuisance, said:

"So that in any case, when the company is enabled to show a reasonable necessity for the location at the particular point, or that no other eligible place can be found where a similar injury would not be inflicted upon another person or persons, an injunction should be denied and the party remitted to his action for damages. So if the injury be small and capable of being estimated in money and a money payment is an adequate compensation, and the injunction would operate oppressively to the defendant, then it may be that it would be proper to refuse to enjoin. (See remarks of Lord Justice A. L. Smith in Shelfer v. Electric Light Company, 1895, 1 Chan., pp. 321-323.) However, we would not be understood as laying down any fixed rules upon this point, but as merely throwing out some suggestions which may be useful in the final determination of the rights of the parties."

(See also Joyce on Injunctions, sec. 1067; Richard's Appeal, 57 Pa. St., 105, 98 Am. Dec., 202; Huckenstine's Appeal, 70 Pa. St., 102, 10 Am. Reps., 669; Ballentine v. Webb, 13 L. R. A., 321, and Gilbert v. Showerman, 23 Mich., 448.)

The case last cited is quite similar to the one in hand, except that it was therein sought to prevent the establishment and maintenance of a new business installed after the complainant and his family became residents of his adjoining property. The luminous

opinion in that case was written by Judge Cooley, and we quote its conclusion as follows:

"We can not shut our eyes to the obvious truth that if the running of this mill can be enjoined, almost any manufactory in any of our cities can be enjoined upon similar reasons. Some resident must be incommoded or annoyed by almost any of them. In the heaviest business quarters and among the most offensive trades of every city will be found persons who, from motives of convenience, economy or necessity, have taken up there their abode; but in the administration of equitable police, the greater and more general interests must be regarded rather than the inferior and special. The welfare of community can not be otherwise subserved and its necessities provided for. Minor inconveniences must be remedied by actions for the recovery of damages rather than by the severe process of injunction. On the whole case we are of opinion that the complainant, having taken up his residence in a portion of the city mainly appropriated to business purposes, can not complain of the establishment of any new business near him, provided such new business is not in itself objectionable as compared with those already established, and is carried on in a proper manner. We do not find from the evidence that the business of defendants was thus objectionable, or that in the manner of conducting it there is special ground of complaint. And the decree dismissing the bill must therefore be affirmed with costs. But the dismissal is to be without prejudice to any proceeding the complainant may be advised to take at law."

And in the very recent case of Galveston, H. & S. A. Ry. Co. v. DeGroff, 102 Texas, 432, 118 S. W., 138, our Supreme Court said: "The question of issuing an injunction, under such state of facts, depends upon the circumstances, and it is the duty of the court to consider the relative injury to the plaintiffs by a continuance of the nuisance to that which would be inflicted upon the defendant and the public by granting and enforcing an injunction, and if the injury to the plaintiffs appears to be greatly less in amount in comparison to that which will result to the railroad company and the public, then it is the duty of the court to deny the writ of injunction. Wees v. Coal & Iron Co., 54 W. Va., 430, 46 S. E., 166; Sheldon v. Rockwell, 9 Wis., 166, 76 Am. Dec., 265."

While the right of habitation is one of great importance, and while the law should and does afford all reasonable protection to the home, still, these high considerations do not, in all instances, override all others. Cotton is one of the most important products of this State, and cotton gins are absolutely essential to the welfare of that industry, and it can not be a sound rule of public policy nor a just rule of law which would outlaw them or require their owners, no matter how much care may and have been exercised and expense incurred in locating them, to move them elsewhere, merely because they result in some annoyance or discomfort to a family which has taken up its residence on adjacent property long after such gins have been located.

In the recent case of Sherman Gas & Electric Co. v. Belden, 123 S. W., 119, which was a suit for damages only, and not an effort to

restrain the operation of the plant, our Supreme Court held, in effect, that the matters complained of did not constitute a nuisance merely because they annoyed the plaintiff in that case, and that the true test was whether or not they were such as would materially annoy and disturb persons of ordinary sensibilities, tastes and habits. But in this case, where the severe remedy of injunction is sought, such relief should not be granted unless, in addition to the proof ordinarily necessary to establish the existence of a nuisance, it is made to appear that, in maintaining his. gin at its present location, the defendant is acting unreasonably; and the question of the reasonableness of his conduct is a question of fact to be determined from all the testimony, including that heard on the former trial, and any other which may tend to show the expense or loss of abandoning the gin or removing it to some other locality free from similar objections by adjacent owners, and whether or not such other locality can be had at all.

We also deem it proper to say, by way of suggestion, that if the case is tried with a jury, it would seem to be eminently proper to submit it upon special issues, and, after the facts are found, the court can then determine what would be the proper judgment to render.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*