## McWHORTER v. LANGLEY. (No. 6293.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 31, 1919. On Motion for Rehearing, March 31, 1920.)

1. **Fraudulent conveyances ☞272—Burden to show insolvency on complaining creditor.**

In trespass to try title by judgment creditor against his debtors' grantee, burden was on plaintiff judgment creditor to show insolvency of the debtors when they made conveyance.

2. **Fraudulent conveyances ☞87(1)—Creditor paying more than debt for debtors' land a purchaser in fact.**

Where twin brothers owed another brother $600, and sold him their two-elevenths interest in certain land for $1,200 in money, creditor brother in eyes of law was a purchaser as distinguished from a creditor who takes conveyance of only enough property to pay debt.

3. **Fraudulent conveyances ☞300(7) — Evidence showing full value paid for land by grantee.**

In trespass to try title by judgment creditor of twin brothers against another brother to whom twins· conveyed, evidence *held* to show that $1,200 paid by grantee brother to twins' was the reasonable market value of the land, $600 in excess of amount twins owed him.

4. **Fraudulent conveyances ☞282—Burden on creditor to show knowledge of fraudulent intent by grantee.**

To set aside conveyance to one who paid full value, it devolved upon complaining creditor of grantors to establish, not only conveyance was made by grantors with fraudulent intent to hinder, delay, or defraud creditors, but also· intent was known to grantee.

5. **Fraudulent conveyances ☞298(2) — Evidence not justifying finding land was sold fraudulently.**

In trespass to try title by judgment creditor of twin brothers, who sold interest in land to another brother, defendant, for $1,200, when owing him $600, evidence *held* insufficient to justify finding that debtor twins sold with fraudulent intent, so that no question of notice to purchaser brother was involved.

6. **Fraudulent conveyances ☞158(1) — Buyer not charged with notice of fraud by anything after sale.**

Buyer of land cannot be charged with notice of fraudulent intent on the part of grantor

as to creditors by reason of anything occurring after the sale to him.

7. **Fraudulent conveyances ☞301(3)—Advice of principal creditor to debtor not showing conspiracy.**

Fact that one creditor of a debtor, also the principal creditor, advises debtor not to give deed of trust to another creditor, which advice is accepted and acted upon, standing alone does not show agreement or conspiracy to defraud such other creditor invalidating conveyance for value to principal creditor.

8. **Fraudulent conveyances ☞295(2)—Intent and notice may be shown by circumstances.**

Fraudulent intent in a conveyance and notice thereof on the part of the grantee may be shown by circumstances, but the circumstances relied on should be such that an inference of fraud must necessarily be deduced from them.

9. **Fraudulent conveyances ☞162(1)—Intent to defraud in sale by debtor to creditor must be shown.**

Where a debtor sells to one creditor more property than necessary to pay his claim, intent to defraud other creditors must be shown as a fact to invalidate conveyance; the statute only authorizing a sale to be declared invalid when such intent is shown.

10. **Fraudulent conveyances ☞57(1)—Intent to defraud creditors may exist despite solvency.**

Intent to defraud creditors may exist even when the seller of property is solvent, though insolvency is especially important in determining whether the buyer knew facts sufficient to charge him with notice of fraudulent intent.

### On Motion for Rehearing.

11. **Appeal and error ☞1175(1)—Rule as to rendition of judgment on reversal not of universal application.**

The general rule is that, when there are findings of fact and no error has been committed other than rendering judgment for the wrong party, the appellate court when it reverses will render the judgment which should have been rendered; but the rule is not of universal application.

12. **Appeal and error ☞1172(1)—Appellees cannot contend judgment shown erroneous should be affirmed in part.**

Defendant appellee, having shown by cross-assignments judgment is erroneous and must be set aside, cannot contend it should be set aside in· part and affirmed in part, there having been no separable issues, Court of Civil Appeals having right simply to reverse and remand for new trial, particularly where it appears evidence has not been fully developed, and cause was tried on incorrect theory of law.

Appeal from District Court, Atascosa County; Covey C. Thomas, Judge.

Action by J. M. McWhorter against Gus Langley and others. From judgment for plaintiff against the named defendant, after

dismissal as to the others, plaintiff appeals. Reversed, and cause remanded for a new trial.

J. R. Garnand, of Jourdanton, and R. R. Smith, of Pleasanton, for appellant.

Walter E. Jones, of Jourdanton, and Hertzberg, Kercheville & Thomson, of San Antonio, for appellee.

MOURSUND, J. This is an action on trespass to try title brought by J. M. McWhorter against Gus Langley, James Langley, and L. B. Langley, to recover all of the interest in 381 acres of land inherited by said James and L. B. Langley from their parents.

Gus Langley answered by plea of not guilty.

The suit was dismissed by plaintiff as to James and L. B. Langley, and judgment rendered that plaintiff recover of Gus Langley a one-eleventh interest in the land sued for, and take nothing as to the other one-eleventh interest sued for. Plaintiff appealed.

The court's findings of fact and conclusions of law are as follows:

"Findings of Fact.

"(1) This suit in trespass to try title in and to undivided two-elevenths interest in and to 381 acres of land in Atascosa county, Tex., was brought by plaintiff against Gus Langley, Lonnie Langley and James Langley, brothers, but was dismissed by plaintiff on the day of the trial, as to Lonnie Langley and James Langley, who are now in France in the military service of the United States, are 31 years of age, each, and being brothers the court notices that they are twins, and by that term they will be hereinafter designated.

"(2) Both plaintiff and defendant claim under a common source of title.

"(3) The land really in controversy in this suit amounts only to two-elevenths undivided interest in said 381 acres, being an undivided one-eleventh inherited by each of said twins.

"(4) About March, 1917, said twins were indebted to the Lytle State Bank in the sum of approximately $600, and, upon it being brought to the attention of Gus Langley, he and another brother paid same to said bank for said twins, and said Gus Langley afterwards repaid said brother the amount he had paid to said bank, and there is no evidence that said twins ever paid Gus Langley said sum of $600, other than by the sale of the land to him as hereinafter mentioned.

"(5) About May, 1917, the defendant Gus Langley was informed and thereafter knew that said twins owed plaintiff the notes hereinafter mentioned, and which said McWhorter thereafter reduced to judgment.

"About May, 1917, said McWhorter endeavored to get Gus Langley to go on the notes of said twins, due said McWhorter, which Gus Langley refused to do, and also advised said twins not to secure the indebtedness to McWhorter by giving a deed of trust on their respective one-eleventh interests in the 381 acres of land.

"(6) The approximate date that the twins, or

either of them, entered the military service of the United States, was not shown by the evidence.

"(7) On October 8, 1917, neither of said twins were insolvent for the reason that their interest in said land was sufficient to pay off their debts, so far as shown by the evidence.

"(8) On October 8, 1917, so far as shown by the evidence the only creditors of said twins, or either of them, were the plaintiff and the defendant in this suit. Both of said twins are unmarried men. By general warranty deed, dated October 8, 1917, filed for record October 9, 1917, and recorded in the deed records of Atascosa county, Tex., said twins for a recited consideration of $1,200, which the court finds was paid by Gus Langley, conveyed to said Gus Langley their undivided two-elevenths interest, being one-eleventh each in and to the 381 acres of land described in plaintiff's petition.

"(9) Taking into consideration the small demand for land in Atascosa county at that time, owing to the drought and the war, the court finds that $1,200 was the full reasonable market value of the two-elevenths interest in said 381 acres of land.

"(10) On October 8, 1917, said twins had practically no property of value, except their interest in said land.

"(11) On October 8, 1917, the defendant Gus Langley knew that said twins were indebted to plaintiff McWhorter, and purchased said land from said twins in order to collect the sum of $600 approximately due him by said twins.

"(12) Said McWhorter filed suit against said twins on November 29, 1917, for the amounts due on their notes to him, and secured judgment against them thereafter on December 21, 1917, one being a judgment against James Langley for $209.05 interest and costs of suit, and the other judgment being against Lonnie Langley for $62 interest and costs of suit, and thereafter, under sheriff's sales, based on said judgments, bought in the property at said sales; the amounts bid by him being credited on said judgments.

"Conclusions of Law.

"From the foregoing, the court concludes as follows:

"1. That the defendant Gus Langley, under the circumstances of this case, had the perfect legal right to protect himself by acquiring enough of said two-elevenths interest in said land worth $1,200 to cover the twins' indebtedness to him in the sum of $600 approximately.

"2. That plaintiff is entitled to recover from the defendant Gus Langley only one-half of the two-elevenths interest in and to the 381 acres of land (notwithstanding some decisions apparently holding otherwise, where there were more than two creditors, and where the property involved was not real estate).

"3. That the costs of suit should be adjudged against the defendant.

"4. That judgment should be rendered as indicated by these conclusions."

The seventh finding of fact is attacked as unsupported by the evidence. The court found that the twins owned land subject to execution worth $1,200. Appellant does not

contend that this valuation is too low, so it may be accepted as a fact that the property subject to execution was worth $1,200.

[1] The eighth finding of fact is not attacked by appellant, unless it can be said that an attack upon the seventh includes an attack on the eighth. Referring to the evidence, we find that it supports the finding in paragraph 8 concerning the indebtedness of the twins at the time they made the deed. A comparison of the value of the property subject to execution with the indebtedness shown to exist discloses that under the test prescribed by law the twins were not insolvent at the time they made the deed. Mensing v. Atchison, 26 S. W. 509; Bank v. Robinson, 124 S. W. 177; San Antonio Hardware Co. v. Sanger Bros., 151 S. W. 1104. The burden was upon appellant to show insolvency, and the court did not err in finding that appellant had failed to discharge such burden.

[2] Appellant attacks the eleventh finding of fact as unsupported by evidence, in so far as it constitutes a finding that Gus Langley purchased the land from the twins for the purpose of collecting his debt. Both parties state that this finding is immaterial, and we agree with them. The court was warranted in finding that the twins owed Gus Langley $600, and as plaintiff introduced evidence satisfactorily showing inability on their part to pay any such sum, except by utilizing the value of the land, the court could find that such indebtedness had not been paid at the time Gus purchased the land. The record contains an agreement showing that Gus paid the $1,200 in money, and there is no evidence showing that the twins repaid him $600 in satisfaction of their indebtedness to him. Whether they did so is immaterial in determining the issues in this case. Gus Langley is in the eyes of the law a purchaser as distinguished from a creditor who takes a conveyance of only sufficient property to pay the debt due him.

[3] Appellant also attacks the ninth finding, which is to the effect that $1,200 was the full, reasonable market value of the two-elevenths interest in the 381 acres of land. While there was a conflict in the evidence, there can be no doubt that the court's finding is well supported. The testimony of Jeff Langley is in effect that it was worth less than $1,200; the testimony of R. E. McCloskey placed the value as low as approximately $1,264; the agreement as to the twins' testimony is that they would testify that $1,200 was the reasonable market value of the land they sold. This agreement alone would support the finding. We find nothing in appellant's statement supporting his attack. In fact, the only reference to value therein made is that the record unquestionably establishes the fact:

"That the value of the property appellee claims to have purchased was $1,200 to $1,800 in lump and figured out on the basis of value per acre, respectively."

If that be the condition of the record, the court would undoubtedly be authorized to find the value of the two-elevenths undivided interest to be $1,200.

No request was made for any additional findings of fact.

[4] Both parties attack the conclusions of law and judgment. They do not believe the judgment awarding each side one-half of the land can be sustained, and each contends he should have recovered all of the land in controversy. As Gus Langley paid full value for the land, it devolved upon appellant in order to set aside the conveyance to establish, not only that it was made by the twins with the fraudulent intent to hinder, delay, or defraud their creditors in the collection of their debts, but also that this intent was known to Gus Langley. The court made no specific finding on either issue, and a judgment setting aside the deed, whether wholly or in part, cannot be sustained unless the facts stated in the findings must be construed to establish the fraudulent intent and notice thereof. The findings show: That the twins owned the land in controversy which was worth $1,200; that early in the year 1917 they were sued by the bank, and their brothers, Gus and Jeff, paid off such indebtedness, and then Gus paid Jeff and became the owner of the claim against the twins; that afterwards appellant tried to secure the payment of his claims against the twins by procuring a deed of trust, which it may be inferred they were willing to give, but consulted with Gus, who advised them not to do so, and who also refused to sign their notes to appellant; that some months later Gus bought the land in controversy and paid its full cash value in money, the record being silent whether the twins paid him the sum due him, which was about $600, but disclosing that they failed to pay appellant.

A reference to the statement of facts, if permissible in the absence of requests for additional findings, fails to add anything to the facts found, which would tend to show a fraudulent intent or notice thereof on the part of Gus Langley. In fact, it appears that Gus, as his main reason for not signing the twins' notes to appellant, urged that appellant would turn the note over to the bank, and it does not appear that appellant offered to obviate this objection in any way. The twins had offered to sell their respective one-eleventh interests in the land to their brother Jeff for $600 each, and he had refused to buy. The interests being undivided and there being apparently two separate places, it is natural that difficulty would be experienced in selling same to any person not already owning an interest therein.

[5, 6] Taking the findings and the evidence,

we fail to find any facts which would justify the finding as a fact that the twins sold with fraudulent intent, and of course when no fraudulent intent is shown it is unnecessary to consider whether the purchaser had notice. If it could be said that failure to pay a debt, after acquiring sufficient means to do so, is sufficient to show that the sale through which such means were acquired was made with fraudulent intent, it is obvious that such fact is of no importance because the buyer could not be chargeable with notice by reason of anything occurring after the sale.

[7] The fact that one creditor, and the principal one at that, advises the debtor not to give a deed of trust to another creditor, which advice is accepted and acted upon, can certainly not, standing alone, show an agreement or conspiracy to defraud such other creditor.

[8] While fraudulent intent and notice thereof may be shown by circumstances, the circumstances relied upon should be such that an inference of fraudulent intent must necessarily be deduced therefrom. In this case no finding has been made which is not consistent with good faith on the part of seller and buyer.

[9] The trial court appears to have entertained the view that even though fraudulent intent has not been shown as a fact directly or by circumstantial evidence, and even though notice has not been shown, the law condemns the sale to a creditor of more property than necessary to pay his claim, unless he sees that the balance of the proceeds is applied to the payment of other creditors. Some of the cases cited by appellee tend to support such theory, at least when insolvency exists. See Seligson v. Brown, 61 Tex. 180; Elser v. Graber, 69 Tex. 222, 6 S. W. 560. This court has heretofore had occasion to review the cases on this subject, and at that time came to the conclusion that the later decisions of the Supreme Court negative the doctrine that failure to see to the appropriation of the proceeds of a sale by an insolvent renders the sale fraudulent regardless of the intent of the seller. See Meyer Bros. v. Durham, 35 Tex. Civ. App. 71, 79 S. W. 860, and cases therein cited. The intent to defraud must be shown as a fact, for the statute only authorizes a sale to be declared invalid when such intent is shown. Sanger Bros. v. Colbert, 84 Tex. 668, 19 S. W. 863.

[10] This intent may exist even when the seller is solvent, although insolvency has always been deemed especially important in determining whether a buyer knew facts sufficient to charge him with notice of the fraudulent intent.

As the court failed to find that the sale was made with such intent as is condemned by the statute, and that Gus Langley had notice thereof, and as the facts found by the court do not establish such intent and notice, the judgment setting aside the conveyance cannot be permitted to stand. We do not believe the findings of fact are of such a character as to warrant an inference of fraudulent intent to be drawn therefrom; but, even if they were, the court failed to draw the same, and such facts are not inconsistent with good faith on the part of the sellers and the buyer.

In view of the findings of fact of the trial court, the conclusions of law are erroneous, and the judgment should have been that plaintiff take nothing by his suit. The appellant's assignments of error are overruled. The appellee's fourth and fifth cross-assignments of error are sustained, and all other cross-assignments are overruled.

The judgment of the trial court is reversed, and judgment rendered that plaintiff take nothing by his suit.

## On Motion for Rehearing.

[11] In rendering judgment in this case we followed the general rule that when there are findings of fact, and no error has been committed other than rendering judgment for the wrong party, the appellate court, when it reverses the judgment, will render the judgment which should have been rendered. This rule, however, is not one of universal application. Gose v. Coryell, 59 Tex. Civ. App. 504, 126 S. W. 1164; Purinton v. Gunter & Munson, 3 Tex. Civ. App. 525, 22 S. W. 1008; Neal v. Lehman, 11 Tex. Civ. App. 461, 34 S. W. 153; Elliott v. Morris, 43 Tex. Civ. App. 482, 98 S. W. 220. In this case, had the court rendered judgment for appellant for all of the land, we would have had the ordinary case in which the findings do not warrant the judgment; but in this case judgment was rendered for each party for half of the land, and as to the part of the judgment awarding appellee half of the land we found that the findings of fact did support the judgment.

[12] The appellees having shown by cross-assignments that the judgment is erroneous, and that it must be set aside, cannot contend that it should be set aside in part and affirmed in part, at least where there are no separable issues. We believe that this court has the right to simply reverse the judgment and remand the cause for a new trial; and, it appearing that the evidence has not been fully developed and that it was tried by the court upon a theory of the law which we consider incorrect, we conclude that such course should be adopted. The appellant's motion for rehearing will be granted to the extent only that, instead of rendering judgment in favor of appellee, the judgment of the trial court will be reversed, and the cause remanded for another trial.