MRS. RILLA O'BANION, SHERIFF, ET AL. V. W. Y. HENRY.

No. 6674.   Decided July 22, 1936.
(96 S. W., 2d Series, 233.)

*Ellis B. Warren,* of Center, for plaintiffs in error.

Where a debtor conveys to his son three tracts of land, partly by way of distribution of his property to his heirs and partly for cash, that part of the conveyance that is made by way of distribution to his heirs is voluntary and void as against prior creditors, unless it appear that he has other property within this State subject to execution sufficient to pay his existing debts. Raymond v. Cook, 31 Texas, 374; Speed v. Gilliland, 18 S. W. (2d) 762, writ of error refused; 27 C. J., 544.

*Sanders & McElroy,* of Center, for defendant in error.

MR. PRESIDING JUDGE RYAN delivered the opinion of the Commission of Appeals, Section B.

W. Y. Henry sued to enjoin the sheriff of Shelby County and the Planters Fertilizer & Chemical Company from selling at execution sale, 171 acres of land out of the Z. C. Walker survey in said county, which had been levied on as the property of Jay Henry (plaintiff's father) by virtue of an execution issued out of County Court at Law No. 2 of Tarrant County under a judgment rendered in said court in favor of said Planters Fertilizer and Chemical Company, a corporation, against said Jay Henry.

Plaintiff alleged ownership of the property levied on by virtue of a deed of conveyance duly registered in the deed records of Shelby County in Vol. 161, page 152, to which reference is made for description and for all purposes.

Defendants, after general and special exceptions to plaintiff's petition, and general denial, alleged by way of special answer, in substance, that W. Y. Henry is a son and presumptive heir of Jay Henry, through whom title is claimed and had full knowledge of his father's indebtedness to the company and if he did not have actual knowledge thereof, the price claimed to have been paid to his father is so shockingly inade-

quate as to have put an ordinarily prudent person on notice of the father's fraudulent purpose in making the conveyance, the land conveyed being reasonably worth at least five times the amount claimed to have been paid; conspiracy between father and son for the purpose of hindering, delaying and defrauding was also alleged; also that the conveyance was purely fictitious and without any consideration whatever, or that if any consideration passed it was immediately returned and was not given in good faith.

On final hearing before the court without a jury, judgment was rendered perpetually enjoining the sheriff and the company from selling or attempting to sell the lands described in plaintiff's petition and in the deed from Jay Henry to W. Y. Henry as recorded in Vol. 161, page 152, deed records of Shelby County, under the execution in the sheriff's hands, issued out of County Court at Law No. 2 of Tarrant County, in the cause in which the company recovered judgment against Jay Henry.

Said judgment was affirmed by the Court of Civil Appeals. 64 S. W. (2d) 411.

The record discloses:

After doing business with the company for several years, Jay Henry in December, 1931, owed it the sum of $408.50, according to his own testimony, which he was unable to pay, also to other parties. On December 10, 1931, the company filed suit against Jay Henry in County Court at Law No. 2 of Tarrant County for its debt, returnable on the first Monday in January, 1932, being the fourth day of said month. Citation issued on December 11, 1931, and was served on Jay Henry by a constable of Shelby County, on December 18, 1931.

Afterwards, by deed dated and filed for record with the County Clerk of Shelby County, December 23, 1931, Jay Henry conveyed the lands in controversy with other lands, being all his real property in Shelby County, to his son, W. Y. Henry, the consideration recited being "for and in consideration of the settlement, distribution and division of the distributive share of myself and my wife, and for the further consideration of the payment to me of the sum of four thousand dollars."

Judgment was on January 12, 1932, rendered for the company, in County Court at Law No. 2 of Tarrant County, against Jay Henry, in the sum of $518.35 and costs of suit. By virtue of an execution issued thereunder, the sheriff of Shelby County on March 5, 1932, levied on the lands in contro-

versy, sale to take place on the first Tuesday, being the fifth day of April, 1932.

On March 12, 1932, the District Judge, in chambers and without a hearing, granted temporary restraining order pending hearing on the merits of the case.

Jay Henry testified that at the time he made the conveyance to his son, he was unable to pay the company the amount he owed it; he testified further that he had two sons, Thomas Jay Henry (the elder) to whom he had given a finished education and assisted financially, whereas the younger, William Y. Henry, had not been so favored and the purpose of the conveyance was to balance what he had given the older boy, Thomas Jay Henry.

The son, W. Y. Henry, was not present when the conveyance was made, nor was he present at the trial nor did he testify by deposition. Nor was the older son present at the trial nor did he testify by deposition. No reason or excuse was given for their absence.

The petition for injunction was verified by the father, grantor in the conveyance, as agent of the son, defendant in error. The father testified further that said son had been in school in Beaumont, and worked between school hours, and "I think, now, near two years he has been working for himself." At the time of the trial in September, 1932, the older boy, Thomas J. Henry, was about 31 or 32 years of age; the younger son, W. Y. Henry, became of the age of 21 years in July, 1931.

Jay Henry did not know and never asked the son where he obtained the $4,000.00, recited as part of the consideration in said deed, but after the deed was executed the son (defendant in error) appeared in Timpson, where the father lived, with a check for $4,000.00. The father did not know how much wages the son was earning. He testified that he did not place the check in any bank in Timpson for collection. He first testified on direct examination that the check was cashed in Beaumont, Texas; that he turned it over to his oldest boy and that his oldest boy went to Beaumont and got it cashed; that he, the father, used the proceeds in another deal; that the proceeds were transferred to pay other debts, but that he did not know and could not testify where the proceeds went to. He first testified that he got practically all of the $4,000.00 in cash, but that he did not get it all. Immediately thereafter he testified that the oldest boy put $4,000.00 in his pocket in cash and brought it all to him. The father later testified under examination by the Court that he collected the full $4,000.00, that

it came from Beaumont, but immediately thereafter testified that he did not remember whether the check was on a Beaumont bank or a Port Arthur bank. Under further examination by the Court he testified that he did not give the check to his oldest son, but that he endorsed the check and gave it back to his younger son, who later delivered to him $4,000.00.

He is in charge of the property, collecting rents and managing it, he testified, as agent of the son during the latter's absence.

Jay Henry's wife died in 1925 testate, he being sole devisee of all the real estate and sole executor without bond. Her will was admitted to probate on July 14, 1926. The inventory listed no separate estate but included as her community property all that described in his conveyance to the younger son. He testified that in making the conveyance he was carrying out the wishes of his deceased wife that the younger boy should have the same as the older boy on whom several thousand dollars had been spent to educate, and that his purpose in conveying everything he had was to balance up what he gave the other boy. He testified further that he could have sold some of the land and paid some of his debts but he did not do it because of the boy.

Statements of his financial condition were rendered by Jay Henry to the company from January 26, 1926, each year, until January, 1930. The last reported as assets, besides certain personal property, the residence at Timpson valued at $8500.00 and 500 acres of land in Shelby County at $17,000.00 and as liabilities, a debt of $1300.00 to the bank at Timpson. The first reported as assets besides certain personal property, the residence at Timpson and certain town lots at $5000.00 and 500 acres of land at $20,000.00, with no liabilities. The intervening statements were substantially the same except that of 1927 which listed a debt of $2,000.00 to the Federal Loan Bank at Houston; and that of 1929 which listed a debt of $740.00 to Smith Bros. at Crockett.

The Court of Civil Appeals was of opinion that an issue of fact was made on the evidence as to whether the sale and conveyance by Jay Henry to W. Y. Henry was bona fide, it being for the trial court to decide that issue and because Jay Henry testified that the conveyance of several tracts of land of which those involved are a part, by him to his son, was partly by way of distribution of his property to his son and for a cash consideration of $4,000.00, the judgment of the trial court would not be disturbed.

OPINION.

■ That part of the conveyance, by way of distribution of the debtor grantor's property, is voluntary and void as to prior creditors, the record showing that such debtor was, after such conveyance, not then possessed of property within this State subject to execution, sufficient to pay his existing debts. Article 3997, Rev. Stat., 1925; Maddox v. Summerlin, 92 Texas, 483, 49 S. W., 1033, 50 S. W., 567; Dixon v. Sanderson, 72 Texas, 359, 10 S. W., 535, 13 Am. St. Rep., 801; Dosch v. Nette, 81 Texas, 265, 16 S. W., 1013; Speed v. Gilliland, 18 S. W. (2d) 762, w. e. ref.; 20 Texas Jur., p. 416.

■ If we concede that payment of the $4,000.00 was actually made, full value was not paid because the integral part of the consideration, viz: an equivalent amount in value, to what the father had spent on the elder son was erroneously considered and taken into consideration, which part of the recited consideration, as we have said above, being void, the entire property was conveyed for a grossly inadequate consideration, viz: only $4,000.00.

In Paddock v. Jackson, 41 S. W., 700, an insolvent grantor volunteered to sell to J., an old friend, for $1,000.00, property which was worth $3,000.00. J. knew the grantor was heavily involved. Judge Williams said "By the conveyance to Jackson, Ayers stripped himself of all his property within the reach of his creditors, converting it into money. The necessary effect of this was to defraud his creditors. Jackson aided him in doing this, when he had notice of his insolvency, and of the effect which the conveyance would have upon the interests of creditors. The absence of a bad motive does not relieve the transaction of its fraudulent character. The parties are held to have contemplated the consequences of their act, and this constitutes the fraudulent intent which vitiates the conveyance."

So here, the effect of the conveyance was to strip the father of all his property within the reach of his creditors, and convert it into money, the necessary effect of which was to defraud the father's creditors.

If we treat the boy as a creditor of his father to the extent of the expected inheritance or distributive share of his parent's estate, which seems to have been the reason given by the father for making the deed, then while he might, under that theory, have taken in property not more than reasonably sufficient in value to discharge the so-called claim, yet when he received the transfer to property exceeding in value the amount of such

claim and paid cash in addition, the transaction was fraudulent. Gallagher v. Goldfrank, 75 Texas, 562, 12 S. W., 964; Seeligson v. Brown, 61 Texas, 180; Oppenheimer v. Halff, 68 Texas, 409, 4 S. W., 562; Elser v. Gruber, 69 Texas, 222, 6 S. W., 560.

The judgments of the trial court and Court of Civil Appeals are reversed and judgment is here rendered in favor of plaintiffs in error denying the injunction prayed for.

Opinion adopted by the Supreme Court July 22, 1936.