No. 2501.

A. W. SWEENEY ET AL. v. J. C. CONLEY.

1. MOTIVE OF VENDOR WHEN SALE ATTACKED.—Where a sale is at-
tacked as being in fraud of creditors, it was not error to permit the
vendor, when called as a witness to support the sale, to be asked:
"Did you sell for any other purpose than to pay your debts?" nor to
allow his answer, "that he sold for no other purpose."

2. SALE BY FAILING DEBTOR.—A sale by a failing debtor for the purpose
of applying the proceeds of sale to the payment of his debts, is not
fraudulent as to creditors not sharing in the proceeds of such sale.

3. FACT CASE.—See facts *held* to show a valid sale by a failing debtor.

APPEAL from Morris. Tried below before the Hon. W. P.
McLean.

The opinion states the case.

*Moore & Hart*, for appellants: 1.   Where a sale of property
is attacked as being in fraud of creditors, it is error to permit
the vendor to testify as to his motive in making the sale. (Mil-
ler v. Jannett, 63 Texas, 86; Schmick et al. v. Noel, 8 S. W.
Rep., No. 1, 83.)

2.   A creditor's right to buy goods from a failing debtor is
limited to the amount of indebtedness due him by the debtor,
and if he buys more than is reasonably sufficient to pay his
debts, and pays any part of the consideration to the debtor, the
sale is void.   (Oppenheimer v. Halff & Bro., 68 Texas, 409; El-
lis v. Valentine, 65 Texas, 532; Seligson v. Brown. 61 Texas,
180; Elser v. Graber, 69 Texas, 222.)

3.   A sale of goods made at a time when the vendor is in-
solvent and in failing circumstances to a person who knew
these facts, and who is not a creditor, but who assumes an al-
leged indebtedness for the vendor, a portion of which is mani-
festly fictitious and then pays a part of the purchase price to
the vendor is null and void, and conveys no title to the pur-
chaser as against creditors.   (Oppenheimer v. Halff & Bro.,
68 Texas, 409; Ellis v. Valentine, 65 Texas, 532; Seligson v.
Brown, 61 Texas, 180; Elser v. Graber, 69 Texas, 222; Traylor

v. Townsend, 61 Texas, 144; Lambeth v. Clinton, 65 Texas, 108; Humphry v. Freeman, 22 Texas, 45; Catchings v. Horcrow et. als., 3 S. W. Reporter, 884; Bump on Fraudulent Conveyances, 54, 55.)

*Talbot & Turner* and *J. F. Jones.* for appellants: A debtor has the legal right to pay one or more of his just debts with money or property, though he may thereby withdraw from the reach of other creditors property which they might subject to the payment of their debts equally just, and for this purpose the debtor may convey or sell the property at a fair price to some person who, by the terms of the sale, is bound to see, and does see that the money is appropriated to that purpose in a manner and at a time satisfactory to the creditor to be paid. The intent to hinder, delay or defraud creditors can not exist when the purpose is to appropriate the property of the debtors or the proceeds of its fair value to the payment of one or more just debts. (Ellis v. Valentine, 65 Texas, 532; Numson v. Ellis, 3 App. C. C., sec. 135; Williams v. Perry, 3 App. C. C., sec. 210; Oppenheimer v. Halff, 68 Texas, 409; Elser v. Graber, 69 Texas, 222; Edwards v. Dickson et al., 66 Texas, 613.)

GAINES, ASSOCIATE JUSTICE. The appellee brought this suit in the court below to recover of appellants, who were the sheriff of Morris county and the sureties on his official bond, damages for the seizure of certain personal property levied upon by virtue of an attachment against one W. M. Stringfellow and his wife N. L. Stringfellow. The plaintiff claimed the goods under a sale from W. M. Stringfellow, made before the levy. The defense was that at the time of the sale Stringfellow was insolvent, and that the sale was made to defraud his creditors, and that plaintiff had knowledge of the facts.

The plaintiff having obtained a judgment for the value of the property, the defendants appeal, relying upon two assignments of error only.

W. M. Stringfellow, being upon the stand as a witness for plaintiff, was asked by plaintiff's counsel: "Did you sell out for any other purpose than to pay your debts?" Defendant objected to the question, and his objection being overruled by the court, the witness answered that he sold out for no other purpose." This action of the court is assigned as error, and the proposition is submitted in support of the assignment that

"when a sale of property is attacked as being in fraud of creditors, it is error to permit the vendor to testify as to his motive in making the sale." We can not assent to the proposition. It has been held repeatedly by this court that the seller or grantor in a transaction alleged to be fraudulent will not be permitted to testify that he made the sale or conveyance in good faith, or that he did not intend to defraud his creditors. (Schmick v. Noel, 8 S. W. Rep., 83; Miller v. Jannett, 63 Texas, 86.)

The reason for the exclusion of such testimony is that the question of fraudulent intent in such cases is a mixed one of law and fact, and that to say that the intent was not fraudulent, or that the transaction was made in good faith, is to state a legal conclusion. A witness must state only facts; but his purpose in making a sale is as purely a matter of fact as the fact of the sale itself. The question is not an open one in this court. (Hamburg v. Wood, 66 Texas, 176; Brown v. Lessing, 70 Texas, 544.) It was not error to admit the evidence.

The other assignment relied upon by appellant calls in question the sufficiency of the evidence to support the verdict. There is virtually no conflict in the testimony. It shows that W. M. Stringfellow was insolvent, and that at the time he sold the goods in controversy to appellee a suit had been instituted against him by a firm to which he was indebted. The goods were worth about nine hundred dollars, and consisted of bar furniture, fixtures, liquors, etc. The appellant, in consideration of the sale, assumed debts, owed by Stringfellow, amounting to about eight hundred dollars, and conveyed to him a horse worth one hundred dollars. This horse Stringfellow appropriated to the payment of one of his debts. He had at the time of the transaction two other horses, each of about the same value as the one he received in the trade. The debts assumed were one to J. F. Jones for three hundred dollars, which was secured by a deed in trust upon the furniture and fixtures in controversy; one to appellant Sweeney for money advanced to pay the saloon license; one to Houston, Meeks & Co. of St. Louis for fifty dollars, secured by lien on the two horses then owned by him, and one to S. P. Stringfellow, brother of W. M. Stringfellow, for two hundred dollars. W. M. Stringfellow testified that he owed his brother something over two hundred dollars for a small lot of groceries, a crop and a horse bought of him, and for clerk hire. This was the only debt secured in the transaction, about the justness of which

the testimony creates a suspicion; and we think the jury were amply warranted in finding this a valid bona fide indebtedness. Appellee testified that he paid more for the property than it was worth, because he was in the saloon business himself and wished to get rid of the competition.

This evidence does not disclose a transaction fraudulent as to creditors. Stringfellow had a right to prefer certain of his creditors by transferring to them property in satisfaction of their debts, provided he did not transfer more than was reasonably sufficient for this purpose; and we do not see that he did not have an equal right to sell it to a third party for a fair price, the latter agreeing to pay the consideration upon certain specified debts owed by him. If the excess in the value of the property transferred, over the indebtedness, had been in money or had been promised to the seller by a negotiable promissory note, a different case would have been presented. (Elser v. Graber, 69 Texas, 222.) But here the surplus was paid in a horse, which was subject to forced sale, and which, as a matter of fact, was transferred by the seller in satisfaction of another bona fide debt. This brings the transaction within the principles laid down in Ellis v. Valentine, 65 Texas, 532, and it can not, therefore, be held fraudulent in law. If the jury believed the testimony, and we see no reason why the witnesses should have been discredited, they could not properly have done otherwise than return a verdict for the plaintiff.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered October 23, 1888.