## BLANKENSHIP & BLAKE CO. v. P. J. WILLIS & BRO.

### No. 58.

**1. Fraud as to Creditors—Evidence of Motive.** — Where a creditor purchases the goods of his insolvent debtor, and the transaction is attacked as in fraud of other creditors, he may testify that his motive in making the purchase was only to collect the debt due to himself.

**2. Sale to Creditor Fraudulent as to Other Creditors, when.—** Where an insolvent debtor pays one of his creditors in property, and more property is conveyed than would be reasonably required to pay the debt, and such creditor has knowledge of the insolvency, the existence of other creditors, and the excess in the value of the goods received, the transaction is such as the law condemns, whether this excess is appropriated by the creditor to his own use, or is paid to the debtor in money or negotiable paper.

**3. Same — Sale not Fraudulent, when.** — Where a preferred creditor pays money or executes a negotiable note to his insolvent debtor as part consideration for his purchase of the debtor's goods, the transaction will not be declared fraudulent in law where it is not shown that more goods have been knowingly received than are reasonably required to pay the debt; following Oppenheimer v. Halff, 68 Texas, 409.

**4. Same—Fraudulent Intent Requisite, when.—** Where property received by a preferred creditor is no more than is reasonably required to satisfy his debt, taking into consideration the expense incident to a conversion of the property into money, the invalidity of the transfer, if it be invalid, must result from proof of a fraudulent intent in fact on the part of the debtor and preferred creditor.

APPEAL from Hill. Tried below before Hon. J. M. HALL.

*B. D. Tarlton* and *W. C. Morrow*, for appellant.—1. The witness Burnett having, as the agent of appellants, made the purchase from B. E. Procter, which was attacked as fraudulent, had a right to testify as to the motive which moved him in such purchase, such motive being on his part a matter not of opinion but of knowledge. Hamburg v. Wood, 66 Texas, 168; Phillips v. Edelstein, 2 Ct. App. C. C., sec. 451; Numson v. Ellis, 3 Ct. App. C. C., sec. 134; 1 Whart. Ev., 2 ed., secs. 482, 508; 2 Whart. Ev., sec. 955.

2. The debt due to appellant as creditor of Procter Bros. and the value of the goods received in satisfaction of it were so nearly equal that the further assumption by appellant of the small amounts due to J. V. Procter and to Wornell did not vitiate the transaction, there being shown no fraudulent intent in fact on the part of appellant; and the court should have so charged, as requested. Allen v. Carpenter, 66 Texas, 138; Oppenheimer v. Halff, 68 Texas, 409; La Belle v. Tidball, 69 Texas, 161; Saddlery Co. v. Schoelkopf, 71 Texas, 418.

3. The court erred in its special charge requiring the jury to find for the plaintiff, if defendant agreed to pay an excess in money to Procter, without reference to the knowledge of defendant's agent of the insolvent condition of Procter, or of the purpose of said agent in the purchase of the goods, or of the fraudulent intent on the part of Procter, whether known or unknown to such agent. Lambeth v. McClinton, 65 Texas, 109, 110; Lewy v. Fischl, 65 Texas, 320; Allen v. Carpenter, 66 Texas, 138.

*McKinnon & Carlton*, for appellees.—1. Where a conveyance is attacked as fraudulent, it is not competent for the purchaser at such sale to testify as to his secret motives in making the purchase. Miller v. Jannett, 63 Texas, 82.

2. The $75 debt to J. V. Procter was paid by appellant, not as a bonus or inducement to effect the trade, but as a part of the consideration for the goods; and being thus paid, the effect of the transaction was to place a part of the debtor's goods, though a small part it was, beyond the reach of other creditors. The sale for this reason had in it the elements of fraud. Black v. Vaughan, 70 Texas, 47: Saddlery Co. v. Schoelkopf, 71 Texas, 418; Oppenheimer v. Halff, 68 Texas, 409; Greenleve v. Blum, 59 Texas, 124.

3. The charge of the court was substantially correct and warranted by the proof; and if any error therein, it was immaterial, as the jury, under the facts proven, could have properly rendered no other verdict. Elser v. Graber, 69 Texas, 222; Stevens v. Bank, 62 Texas, 507; Houston v. Dwyer, 59 Texas, 114; Railway v. Delahunty, 53 Texas, 212; Sayles' Civ. Stats., art. 1318, note 3; Williams v. Conger, 49 Texas, 582; Caruth v. Grigsby, 57 Texas, 264; Lambeth v. McClinton, 65 Texas, 109.

STEPHENS, Associate Justice.—J. V. and B. E. Procter, doing business as retail merchants under the firm name of Procter Bros., in the town of Hillsboro, made a transfer of their entire stock of goods under circumstances which gave rise to this lawsuit. On the 1st day of February, 1887, J. V. Procter sold to his partner his interest in the business in consideration of $75, secured by the promissory note of B. E. Procter, and the assumption on the part of the latter of the debts of the firm. Thereafter, on the 4th day of said month, B. E. Procter sold and delivered the

entire stock of goods, valued at $6685.12, to appellant, the Blankenship
& Blake Co., in settlement of a debt owed by said firm to appellant of
$6535.49, and for the further consideration that appellant would pay to
J. V. Procter the $75 note and a debt of $33 owed by said firm for clerk
hire, which sums appellant did afterwards pay.   The transaction was ac-
complished by appellant through its agent, Owen Burnett.   Thereafter,
on the 7th day of February, appellees, P. J. Willis & Bro., who were also
creditors of said firm, seized under attachment a portion of said stock of
goods, which were claimed by appellant under the statute for the trial of
the right of property; and from a verdict and judgment in favor of ap-
pellees as to the property so claimed this appeal is prosecuted.

The evidence discloses the insolvency of Procter Bros. at the time
of these transactions, and there seems to have been no dispute on this,
point in the trial court.   A letter was read in evidence, dated February
9, 1887, from appellant to appellees, containing, among other things, in
speaking of the failure of Procter Bros., this statement: " Our agent,
Mr. Burnett, happened there, and found that they really were in bad
shape, and found that one of the brothers had bought the other out and
was running the firm in an insolvent condition."   It also contains state-
ments showing that the purpose of appellant and its agent in the transac-
tion was to secure its debt.   We conclude from the statement quoted
above, there being nothing in the record in conflict with it, that appel-
lant's agent had notice at the time he acquired the stock of goods of the
undisputed insolvency of Procter Bros.

It also appears from the evidence that Burnett knew of the existence
of appellees' debt, but it does not clearly appear from the evidence that
he took more goods than were reasonably required to satisfy appellant's
claim under the circumstances; and if so, that this was knowingly done.
There is some evidence of a purpose on the part of Burnett to have that
part of the transaction concealed in which he agreed to pay money as a
part consideration.

The court refused to permit appellant to prove by the witness Burnett
that his sole motive or purpose in making the purchase of the stock of
goods was to collect the indebtedness against Procter Bros., and upon this
the first error is assigned.

It is no longer an open question in this State that such testimony is ad-
missible.   Hamburg v. Wood, 66 Texas, 168; Sweeney v. Conley, 71
Texas, 543; Brown v. Lessing, 70 Texas, 544.

Complaint is also made of the action of the court in giving and refus-
ing charges, and we are of opinion that some of the charges given con-
tained error.

It is well settled by numerous decisions of our Supreme Court, that
where an insolvent debtor pays one of his creditors in property, and more

property is conveyed than, under all the circumstances, would be reasonably required to pay the debt, and such creditor has knowledge of the insolvency, the existence of other creditors, and the excess in value of the goods received, the transaction is such as the law condemns, whether this excess is appropriated by the creditor to his own use or is paid to the debtor in money or negotiable paper. Elser v. Graber, 69 Texas, 222, and cases there cited. These cases, however, do not hold that where a preferred creditor pays money or executes a negotiable note to the insolvent debtor as part consideration for the transfer, the transaction will be declared fraudulent in law, where it is not made to appear that more goods have been knowingly received than are reasonably required to pay his debt. The true distinction applicable to the facts of this case is made in the case of Oppenheimer v. Halff & Bro., 68 Texas, 409.

Where the property received by the preferred creditor is no more than is reasonably required to satisfy his debt, taking into consideration the expense incident to a conversion of the property into money, the invalidity of the transfer must result from proof of a fraudulent intent in fact on the part of the debtor and preferred creditor, which would taint the entire transaction. The testimony excluded, as to the intention of Burnett, was therefore material; and the charge should have properly submitted to the jury whether or not, under all the proof, more goods were knowingly received by appellant than were reasonably required to satisfy its debt; and if not, whether the transaction was open and fair, solely for the purpose on the part of appellant and its agent of collecting a just debt; or whether there was also a fraudulent purpose, to which appellant's agent was privy. One of the charges complained of, in effect took the case from the jury, and held the transaction in question to be fraudulent, provided Burnett knew that the $75 note which he assumed was given in consideration of the sale of the goods from B. E. to J. V. Procter. The charge given at the request of appellees is subject to a like objection.

For the errors in excluding above evidence and in the charge of the court, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered December 20, 1892.

Chief Justice Tarlton did not sit in this case.