GUARANTY STATE BANK v. SHIREY et al.*
(No. 10483.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 26, 1924. Rehearing Denied Feb. 16, 1924.)

**1. Appeal and error ☞725(2)—Assignment held too vague for consideration.**

Where a certain paragraph of the answer covered more than two pages of the transcript, an assignment of error that "court erred in sustaining the plaintiff's special exception to that part of paragraph 4 of defendant's original answer," referring to a certain paragraph of the motion for new trial containing the same allegation of error as that contained in the assignment, *held* to warrant appellate court in overruling assignment for vagueness, the court being unable from the assignment, or that portion of the transcript referred to, to determine the ruling complained of.

**2. Appeal and error ☞724(2), 743(1)—Assignment of error should definitely point out error alleged, and refer to the record.**

An assignment of error should definitely point out the error alleged and the page of the transcript where the record thereof is contained.

**3. Fraudulent conveyances ☞121—Insolvent husband held to have right as against creditor bank to deposit money in wife's account to pay debt to her.**

In wife's action against bank for conversion of deposits, in which it was claimed that the bank appropriated wife's deposits for payment of husband's note, it was no defense that husband had deposited the money in wife's account at a time when he was insolvent, where in so doing he was merely repaying the wife for money or property out of her separate estate used by him.

**4. Fraudulent conveyances ☞121 — Debtor may in good faith prefer creditor.**

A debtor acting in good faith has the legal right to pay one or more of his just debts with money or property, conveyed at a fair price, either to the creditor or to some other person who by the terms of the sale is bound to see, and does see, that the money or property is appropriated for that purpose.

**5. Appeal and error ☞1056(1)—Exclusion of testimony held harmless in action against bank for conversion of deposits.**

In wife's action against bank for conversion, in which it was claimed that the bank had appropriated wife's deposits for payment of husband's note, exclusion of testimony that at the time of the trial the husband was insolvent and had no property in the state *held* harmless.

**6. Husband and wife ☞262(1)—Statute concerning presumption as to ownership of deposits construed.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 4621, 4622, providing that funds on deposit in a bank, whether in the name of the husband or the wife, shall be presumed to be the separate property of the party in whose name they stand, regardless of who made the deposit, *held* to apply generally to creditors and not merely to controversies between the husband and wife and the bank.

**7. Husband and wife ☞247—Statute concerning presumption as to ownership of deposits in bank held not unconstitutional.**

Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, providing that funds on deposit in a bank, whether in the name of the husband or the wife, shall be presumed to be the separate property of the party in whose name they stand, regardless of who made the deposit, *held* not unconstitutional as against contention that it constitutes an enlargement of Const. art. 16, § 15, providing that all property of the wife owned or claimed by her before marriage and that acquired afterward by gift, devise, or descent shall be her separate property, and that laws shall be passed more clearly defining the rights of a wife in relation as well to her separate property as that held in common with husband.

**8. Husband and wife ☞235(3)—Instruction as to what constituted wife's separate property held warranted by pleadings.**

In wife's action against bank for conversion, in which it was claimed that the bank appropriated deposits in wife's account for payment of husband's note, and in which it was claimed on behalf of bank that husband made deposits from his earnings, instruction that, "all funds paid by the husband to the wife with the understanding and agreement between them that same is in repayment of her separate property, which she has advanced to or loaned him, or which has been used by him with her consent, would be her separate property," *held* warranted by pleadings.

**9. Trial ☞356(5)—Failure of jury to answer special issue held immaterial in view of answers to other issues.**

In wife's action against bank for conversion, in which it was claimed that the bank appropriated deposits in wife's account toward payment of husband's note, and in which jury found in reply to special issues that deposits made by husband in wife's account constituted a repayment of wife's money or property used by husband, the failure of the jury to answer special issue as to whether the husband made deposits in wife's name, pursuant to a conspiracy to defraud his creditors, *held* immaterial.

**10. Evidence ☞91—Rule as to burden of proof stated.**

The burden is on the plaintiff to establish the issues upon which he relies for recovery, and is upon defendant to establish the affirmative defenses relied upon to defeat the recovery.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by Louise Ball Shirey and husband against the Guaranty State Bank. Judgment for plaintiffs, and defendant appeals. Affirmed.

Chas. T. Rowland and Marvin H. Brown, both of Fort Worth, for appellant.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted April 2, 1924.

Geo. W. Polk, of Fort Worth, for appellees.

BUCK, J. This cause was instituted by Mrs. Louise Ball Shirey, joined pro forma by her husband, Dr. Guy O. Shirey, against the Guaranty State Bank of Fort Worth. The plaintiff alleged that she had on deposit in the defendant bank in her name and as her sole and separate estate certain funds, but that the bank unlawfully converted and appropriated to its own use $700 out of said funds. She sued for this sum, and interest, from the date of the alleged conversion, and for $400 attorney's fee, and for exemplary damages.

The bank answered that the plaintiff had no income from any separate estate, but that the funds deposited in the bank in her name were placed there by her husband out of his earnings as a physician; that the husband owed the bank a note for $700, being a community debt; that he had theretofore, for the purpose of defrauding his creditors and the bank, changed his account in said bank from the name of Guy O. Shirey to Louise Ball Shirey. But after learning of the acts and dealings of Guy O. Shirey, and that he was insolvent and in imminent danger of insolvency, the bank felt insecure, and, believing its debt was in jeopardy, and knowing that the funds on deposit in the name of Louise Ball Shirey were the community funds of said husband and wife, it charged the amount of such note and community debt to said account.

The cause was tried before a jury on special issues, and the jury found in answer to one issue submitted in the main charge that, at the time the defendant bank, through its employees, appropriated $700 in payment of a note executed by Dr. Guy O. Shirey, said $700 so appropriated was the separate property of the plaintiff. The jury further found that it was not the understanding or agreement between the plaintiff and her husband that the money deposited in the defendant bank in the name of the plaintiff should be and remain the community property of plaintiff and her husband. The jury failed to answer issue No. 1, requested by defendant, to wit:

"Did the plaintiff, Guy O. Shirey, on or about December 20, 1921, change the deposit in the Guaranty State Bank from that of Guy O. Shirey to that of his wife, Louise Ball Shirey, for the purpose of colluding with her and conspiring with his wife to place his funds and moneys beyond the reach of his creditors and the defendant or either of them?"

Upon the answers of the jury, the trial court entered judgment for plaintiff and against defendant for $700, with interest at 6 per cent. per annum from February 28, 1922, the date of the alleged appropriation. From this judgment, the defendant has appealed.

Dr. Sam C. Ball, the father of plaintiff below, testified that some time in August, 1919, he gave his daughter $2,700 to pay on a home, which she needed and was desirous of purchasing; that the witness lived at New Boston, and his daughter with her husband lived at Fort Worth; that he gave his daughter this money for her sole and separate estate; and that he knew that she used the $2,700 as the first payment on a home.

Mrs. Shirey testified that with the money received from her father she made the first payment on a home in Fort Worth; that she lived in this home about two years, and then sold it, moving to the Texas Hotel; that for her equity in the home she got only a Doris automobile, value at $5,000; that previous to the sale of her home a Cadillac car belonging to her husband had been stolen. The Cadillac was insured for $3,000, but the insurance company only paid $2,000 in settlement of the claim, claiming a deterioration in value after the time the car was insured; that at the time of the sale of the home and the acceptance of the Doris car for her equity, and her agreement to allow her husband to use the car in his practice, her husband promised to pay to her the $2,700 she had invested in the home, and represented by the Doris car, and agreed to deposit to her credit the $2,000 when collected from the insurance company for the Cadillac car.

H. W. Orgain testified that he was the cashier of the defendant bank, and that he knew Dr. Guy O. Shirey; that prior to December 20, 1921, Dr. Shirey was a customer at the defendant bank, and on or about that date the witness had a conversation with Dr. Shirey, in which he said: "Shirey, somebody is going to garnishee your account"; that Dr. Shirey replied: "Well, I guess I will close it and put it in my wife's account—change it to her name." He did this at once; that Mrs. Shirey was not present at the time, although she may have been in the bank in the afternoon; that her signature was left in the bank for identification later, probably the same day; that on December 20th, when the account was changed from Dr. Shirey's name to his wife's name, Dr. Shirey made two deposits, one for $108.37, and one for $140; that several deposits were made up to January 23, 1922, when $2,000 was deposited, and that this was a check or voucher from "Hand in Hand," an insurance company; that subsequent deposits were made up to February 21, 1922, when $83 was deposited in Dr. Shirey's handwriting; that all but one of the deposits were made in Dr. Shirey's handwriting; that, after they had charged the $700 note, executed by Dr. Shirey to the bank, to the account kept in the name of Mrs. Shirey, Dr. Shirey came into the bank and wanted to know if we had charged the note to him, and that he was told that the bank had; that he made a remark about it being a funny way to do busi-

ness, that they told him that they had charged the note to him because he was leaving Fort Worth; that he said that he was not going to be gone long and would pay the note; that Mr. Rhome, of the bank said, "Well, that's what we would like for you to do"; that Dr. Shirey then walked out.

As to why the bank did not take the $145 Dr. Shirey had on deposit in his own name at the time he opened up an account in the name of his wife and apply it on the $700 note, the witness said:

"I will state that I don't think the note was due at that time; this $700 note was his renewal of the other one; I don't know when the other note was due, but I could look it up; I haven't my records covering that with me; I couldn't say whether it was not due until the 1st of March or not, because I haven't looked it up. The $700 note was due April 1, 1922."

Mrs. Shirey testified that probably on or about February 28, 1922, she drew a check for the total amount of her deposit in the defendant bank, for $2,355.76; that after the bank told her that $700 had been charged to her husband's account, she checked out the remaining $1,655.76 and demanded the $700 balance, which the bank refused to pay.

We will cite other testimony as may be further necessary in the course of the opinion.

[1] Appellant's first assignment of error is as follows:

"The court erred in sustaining the plaintiff's special exception to that part of paragraph 4 of defendant's original answer."

In parenthesis reference is made to paragraph 1, motion for new trial, and there we find the same allegation of error as contained in the assignment. We are not able, from the assignment or that portion of the transcript to which reference was made, to determine the ruling of the court of which appellant complains, and we would be justified in overruling the assignment for vagueness.

In paragraph 4 of defendant's answer, allegations of fraud and collusion between the plaintiff and her husband, for the purpose of defrauding the creditors of her husband, including the defendant, are made. Defendant alleges that Guy O. Shirey, just prior to the charging of the note and debt owing by Guy O. Shirey to the account carried in the name of his wife, Louise Ball Shirey, "transferred all of the funds then on deposit in your defendant's banking house and in the name of Guy O. Shirey over and into an account in the name of the plaintiff, Louise Ball Shirey, and that said plaintiff transferred all of the properties that he had on or about said time over into his said wife's name for the purpose of defrauding his creditors and more especially your defendant; that he surreptitiously made arrangements to sell his medical practice, his furniture, furnishings, tools and fixtures to one ———, and in like manner

arranged to leave the city of Fort Worth, county of Tarrant, and the state of Texas, for the purpose of going beyond the jurisdiction of the courts of said state."

It is further alleged that Dr. Shirey at this time was in a controversy with the American Legion over funds that were alleged to be and should have been in his possession or under his control, and suits were being threatened against the said Shirey; that defendant becoming fearful that it could not collect its debt, and knowing full well that the funds on deposit in its banking house in the name of Louise Ball Shirey were the community funds of the plaintiff and her husband, and that the debt to the bank was a community debt, the defendant charged such debt against the account held and carried in the name of the plaintiff, Louise Ball Shirey. This paragraph of the answer covers more than two pages of the transcript. The court sustained plaintiff's special exception to substantially that portion of defendant's answer which is included in quotation marks above.

[2] Assignment 2 complains of the action of the trial court in "sustaining plaintiff's objection while the plaintiff was on the stand testifying and on cross-examination, as shown by defendant's bill of exception No. 1 (being paragraph 11, motion for new trial, Transcript, p. 24a)." By reference to the motion for new trial, it is found that as to the ground of objection there urged the inquirer is referred to defendant's bill of exception No. 1. The assignment of error should definitely point out the error alleged, and the page of the transcript where the record thereof is contained, and not require an appellate court to play the game of "Pussy wants a corner" to determine, if it may, the nature of the error claimed. By reference to defendant's bill of exception No. 1 it is found that the questions, to which objection to the answers thereto was sustained, are: "Is Dr. Shirey insolvent?" and "I will ask you this question: I will ask you if Dr. Shirey has any property in the state of Texas of any character?" The objection to the questions was that they and the answers thereto were irrelevant and immaterial. We find no reversible error in the ruling of the court in either instance.

The third assignment complains of the action of the court in overruling the defendant's motion at the conclusion of the testimony for an instructed verdict. We think the assignment should be overruled.

[3, 4] We will group these three assignments in our discussion. Mrs. Shirey's testimony showed that she received the $2,700 from her father, and invested it in a home, which was later sold and a car taken for her equity, and that her husband, in view of that fact, and the further permission of his wife to use the car so taken, agreed to repay her the amount invested in the home.

Dr. Sam C. Ball, the father of Mrs. Shirey, testified that he gave his daughter $2,700 to invest in a home, and that she did so invest it. The draft drawn by Mrs. Shirey on her father for $2,700, on August 6, 1919, was also introduced. We think the fact that the equity in the home was the separate property of Mrs. Shirey is proven without conflict of evidence; that it is further established, without conflict, that the home was sold and Mrs. Shirey received for her equity a Doris car, which she agreed to allow her husband to use; that her husband later sold this car to his father; that Dr. Shirey had theretofore borrowed from his father $2,500, and gave a note therefor, and that the payment of the note and $500 in cash was the consideration for the sale. It is further shown that Dr. Shirey promised his wife to repay her the $2,700 invested in the home, and which was represented by the Doris car, subsequently used and sold by Dr. Shirey, and that he promised Mrs. Shirey to turn over to her, in part payment, the $2,000 to be received from the insurance company on the Cadillac car aforesaid: that this amount was later deposited to Mrs. Shirey's credit. He had the right to repay his wife for money or property out of her separate estate used by him, even though at the time of the payment and at the time of the trial he was insolvent and had no property in the state subject to execution. A debtor has the legal right to pay one or more of his just debts with money or property, conveyed at a fair price, either to the debtor or to some other person, who, by the terms of the sale, is bound to see, and does see, that the money or property is appropriated for that purpose. Sweeney v. Conley, 71 Tex. 543, 9 S. W. 548; Willis & Bro. v. Whitsitt, 67 Tex. 673, 4 S. W. 253. The fact that the preferred creditor was the wife, or other relative, would not affect the debtor's right to pay her out of the community funds, if the good faith of the indebtedness was established. Moglia v. Rios (Tex. Civ. App.) 200 S. W. 1133; McWhorter v. Langley (Tex. Civ. App.) 220 S. W. 364; Sikes v. Bank (Tex. Civ. App.) 197 S. W. 227, writ refused.

[5] Therefore, we conclude that the exclusion of any testimony tending to show that Dr. Shirey at the time of the trial was insolvent, and had no property in the state, would be, at most, harmless error. These three assignments are overruled.

The court charged the jury:

"You are instructed that all property acquired by a married woman during the marital relations, either by gift, devise, or descent, is her separate property, and all moneys on deposit to her account in the bank are presumed to be her separate property."

This is substantially the law as stated in articles 4621 and 4622, Rev. Statutes 1914 Supp. Appellant admits such to be the case,

but urges that article 4622, which provides, in part, that "any funds on deposit in any bank or banking institution, whether in the name of the husband or the wife, shall be presumed to be the separate property of the party in whose name they stand, regardless of who made the deposit, and unless said bank or banking institution is notified to the contrary, it shall be governed accordingly in honoring checks and orders against such account," is unconstitutional. Appellant urges that that part of article 4622, above quoted, is void because discriminatory and class legislation, and that it was the intention of the Legislature only that all money deposited in a bank or banking institution should be, so far as the husband and wife and the said bank or banking institution are concerned, the separate property of the one in whose name said money was deposited, and said article never intended that such presumption should apply generally to creditors.

Article 16, § 15, of the state Constitution, provides:

"All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be her separate property; and laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property as that held in common with her husband. Laws shall also be passed providing for the registration of the wife's separate property."

Prior to the amendment of 1917 to article 4621, it was held by a number of decisions of the Courts of Civil Appeals that this act, amended by the act of 1913, did not change the rule making the rents from the wife's separate estate community property. Tannehill v. Tannehill (Tex. Civ. App.) 171 S. W. 1050; Scott v. Scott (Tex. Civ. App.) 170 S. W. 273; Emerson-Brantingham Implement Co. v. Brothers (Tex. Civ. App.) 194 S. W. 608; Texas Lbr. & Loan Co. v. First Nat. Bank (Tex. Civ. App.) 209 S. W. 811. And it was held in a number of these cases that, though such rents were community property, yet they were not liable for community debts. See Red River Nat. Bank v. Ferguson, 109 Tex. 287, 206 S. W. 923, and cases there cited; First Nat. Bank v. Akin, 109 Tex. 297, 206 S. W. 928, Id. (Tex. Civ. App.) 198 S. W. 1017, also this court's opinion in 194 S. W. 610. But by act of 1917 (Vernon's Ann. Civ. St. Supp. 1918, art. 4621) article 4621 was amended so as to make the rents from lands belonging to the separate estate of the wife or husband also the separate estate of such spouse.

Article 4622 reads as follows:

"All property acquired by either the husband or wife during marriage, except that which is the separate property of either one or the other, shall be deemed the common property of the

husband and wife, and during coverture may be disposed of by the husband only, provided, however, the personal earnings of the wife, the rents from the wife's real estate, the interest on bonds and notes belonging to her and dividends on stocks owned by her shall be under the control, management and disposition of the wife alone, subject to the provisions of article 4621, as hereinabove written; *and further provided, that any funds on deposit in any bank or banking institution, whether in the name of the husband or the wife, shall be presumed to be the separate property of the party in whose name they stand, regardless of who made the deposit, and unless said bank or banking institution is notified to the contrary, it shall be governed accordingly in honoring checks and orders against such account.*"

[6, 7] The part which the appellant seeks to construe so as to make it applicable only as to controversies between husband and wife and the banking institution is underscored above. We see no reason why that portion of the article should be thus limited, or why, if not thus limited, it should be held unconstitutional. Appellant suggests no reason, except that, as it claims, the statute is an attempted enlargement of article 16, section 15, of the Constitution, above quoted. We are inclined to think that the portion of the article of the Constitution under discussion that "laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property as that held in common with her husband," indicates a constitutional authority for the Legislature to pass laws, such as this, more definitely guarding and defining the rights of the wife with reference to the character of evidence and quantum of proof necessary to establish and maintain her rights, than was practicable in the Constitution itself. We overrule this assignment.

[8] The court charged the jury that:

"All funds paid by the husband to the wife with the understanding and agreement between them that same is in repayment of her separate property which she has advanced to or loaned him, or which has been used by him with her consent, would be her separate property."

The defendant objected to this charge, "because the same is upon the weight of the evidence; because no pleadings on the part of the plaintiff to warrant the submission of the same; because there is no evidence to justify the submission of such charge; because too general."

The plaintiff pleaded that she had deposited, or caused to be deposited, certain sums of money in the defendant bank, and that defendant refused to pay a check for the balance of said amount so deposited, and deducted from said amount $700 claimed to be due the bank. The defendant in its answer acknowledged that it did charge the $700, represented by the note made by Dr. Shirey, to the account kept in the name of the plaintiff.

In order to establish her right in her separate estate to the full amount of the deposit claimed, the plaintiff had to show that her husband had deposited at various times certain amounts to her credit in the defendant bank, and that in doing so he was repaying to her the amount of the money or property used by him out of his wife's separate estate. While the main contention of the plaintiff was that she was entitled to the full amount of the deposit made in the defendant bank, less certain checks drawn by her and her husband, yet in doing this she was required to show that the money so deposited by her husband was in payment of the valid debt to her. We do not think that the charge is erroneous because not supported by pleadings.

The appellant urges that by reason of the failure of the jury to answer issue No. 1, requested by defendant and shown hereinabove, the verdict was incomplete and would not support the judgment.

[9] We are of the opinion that the answer of the jury that, at the time the defendant bank appropriated $700 in payment of a note executed by Dr. Guy O. Shirey, said $700 so appropriated was the separate property of the plaintiff, and the further finding that it was not the understanding or agreement between the plaintiff and her husband that the money deposited in the defendant bank in the name of plaintiff should remain the community property of the plaintiff and her husband, makes the answer to issue No. 1 immaterial. If the funds so deposited were intended by the husband and accepted by the wife in payment of moneys or property used by the husband out of the separate estate of his wife, it would become immaterial as to whether Dr. Shirey and the plaintiff conspired together to place his funds and moneys beyond the reach of his other creditors. Hence we overrule the assignment.

An attack is directed to that portion of the court's charge as follows:

"The burden is upon the defendant to establish by a preponderance of the evidence the negative answer to question No. 1, and the affirmative answer to special issues Nos. 1 and 2 requested by the defendant."

[10] The burden is upon the plaintiff to establish the issues upon which he relies for recovery, and is upon defendant to establish the affirmative defenses relied upon to defeat the recovery. Boswell et al. v. Pannell, 107 Tex. 433, 180 S. W. 593; Prairie Oil, etc., Co. v. Wright (Tex. Civ. App.) 238 S. W. 974; Bank v. Farrington (Tex. Civ. App.) 243 S. W. 544. While it is true that the burden of proof is upon the plaintiff on the whole case to establish by a preponderance of evidence the facts upon which he relies for recovery, yet as to affirmative facts re-

lied upon by defendant to defeat a recovery the burden is upon him to establish these facts. We do not think the court erred in giving this charge.

All assignments are overruled, and the judgment is affirmed.